[No. 17681. Department Two. May 15, 1923.]

NORTHWEST PERFECTION TIRE COMPANY, *Respondent,* v.
PERFECTION TIRE CORPORATION *et al., Appellants.*[1]

SALES (160)—PROVISION AS TO QUALITY—CONSTRUCTION—BREACH
OF WARRANTY—REMEDIES OF PURCHASER. A dealer in automobile tires
is, not restricted to the contract provision for replacement of de-
fective tires furnished for sale and distribution, under a contract
whereby the manufacturer guaranteed the quality of the tires sold
and agreed to make good all defects and to respect adjustments
made by the buyer; and that remedy not being made exclusive, the
buyer may sue for damages for breach of the contract of warranty.

CORPORATIONS (231)—DISSOLUTION—ABSORPTION BY OTHER COR-
PORATION—LIABILITY—TRUSTEE FOR CREDITORS. Where a creditor
corporation so completely took over an insolvent debtor corporation
as to in fact absorb it and continue its business and for all practi-
cal purposes assumed to become the successor of its organization,
business and property, the creditor corporation thereby impliedly
assumed to pay all the insolvent's obligations existing at the time it
was so taken over; and cannot insist upon being held only as a
trustee for creditors, and entitled to account to them in a court of
equity for the property taken over.

SALES (164-1)—BREACH OF WARRANTY — DAMAGES — EVIDENCE—
SUFFICIENCY. A finding that $7,000 worth of tires sold to a dealer
were all practically junk, and worth but $250, is not sustained,
where it appears that they were of some considerable market value,
and capable of being sold as seconds, and that the dealer disposed
of a large number, receiving much more than $250.

SAME (165)—DAMAGES—EXPENDITURES BY PURCHASER. A dealer
in tires, under an exclusive agency contract, may recover, on the
manufacturer's breach of warranty of the tires which were so de-
fective as to be unsalable, his expenditures incurred in establishing
subagencies contemplated by the contract.

COSTS (62)—ON APPEAL—MORE FAVORABLE JUDGMENT. Defend-
ants, securing on appeal a reduction of $1,250 in the judgment
against them, are entitled to their costs on appeal.

Appeal from a judgment of the superior court for
King county, Smith, J., entered May, 3, 1922, upon
findings in favor of the plaintiff, in an action on con-
tract, tried to the court. Reversed.

[1] Reported in 215 Pac. 360.

. *Bausman; Oldham, Bullitt & Eggerman* and *Walter L. Nossaman,* for appellants.

*Wright, Kelleher, Allen & Hilen* and *Coleman & Gable,* for respondent.

Parker, J.—This action was originally commenced early in November, 1920, in the superior court for King county, by the plaintiff, Northwest Perfection Tire Company, a Washington corporation of Mt. Vernon, hereinafter called the Mt. Vernon company, seeking recovery of damages from the Perfection Tire Corporation, a Washington corporation of Spokane, hereinafter called the Spokane company, for an alleged breach of contract by the terms of which that company was to furnish to the Mt. Vernon company Perfection automobile tires for sale and distribution in the counties of Skagit, Whatcom, Island and San Juan, in this state. Thereafter, in July, 1921, by leave of court, the plaintiff filed in the case its amended and supplemental complaint, making the Perfection Tire & Rubber Company, a foreign corporation, the manufacturer of the tires in question, with its principal offices and factory at Fort Madison, Iowa, hereinafter called the Iowa company, an additional defendant; claiming damages also against that company and alleging facts to show that it had become liable for the debts and obligations of the Spokane company, by reason of it having, after the commencement of the action, taken over and continued the business of that company, and to that end had appropriated all of its property, assets and business organization. Thereafter a trial upon the merits was had before the court, sitting without a jury, which resulted in findings and judgment awarding to the Mt. Vernon company recovery of damages in the sum of $7,900.94, against both the Spokane and Iowa companies, from which they have appealed to this court.

The Iowa company is engaged in the manufacture of automobile tires called "Perfection. tires", with its principal offices and factory at Fort Madison, Iowa, having a branch office and resident general agent at Seattle. The Spokane company had acquired from the Iowa company the exclusive right of sale and distribution of "Perfection tires" over the entire state of Washington. The Mt. Vernon company was organized principally for the purpose of distributing "Perfection tires" in the counties above named, and, like the Spokane company, had adopted the word "Perfection" as a part of its name, by mutual consent of all concerned, for mutual advantages in the way of advertising "Perfection tires". The tires in question were furnished by the Iowa company to the Spokane company, and in turn by that company to the Mt. Vernon company. The contract, for the alleged breach of which damages are here sought to be recovered by the Mt. Vernon company, in so far as we need here notice its terms, reads as follows:

"This contract made and entered into in duplicate this ninth day of April, 1920, by and between the Perfection Tire Corporation of Spokane, Washington, a corporation, hereinafter called the Company, party of the first part, and the Northwest Perfection Tire Co., of Mount Vernon, Washington, hereinafter called the Dealer, party of the second part.

"Witnesseth that for and in consideration of the sum of Five Thousand Dollars this day paid by the Dealer to the Company, and of the further payments to be made to the Company by the Dealer, as hereinafter set forth, the Company does hereby give and grant to the Dealer the exclusive right to sell and the agency for the Perfection Tires and Tubes in the Counties of Skagit, Whatcom, Island and San Juan, State of Washington, for the period of one year from the date hereof, upon the following terms and conditions, to-wit:

"The Dealer is to take of and from the Company, not less than Five Thousand Dollars worth of tires and tubes within the period of one year from the date and is to pay therefor, in manner following, to-wit:

"As ordered with privilege of thirty days trade exceptance, provided that no additional payments shall be necessary until said sum of Five Thousand Dollars is exhausted. . . .

"The Dealer is to have the right to appoint sub-agents throughout said Counties for the sale of said tires, casings and tubes during the term of this contract and his rights in that respect shall be exclusive.

"The Dealer is to receive a commission of twenty-five and five per cent on all tires, tubes, casings sold by him in this territory during the existence of this contract, with the right reserved to the dealer to renew this contract for another year, conditioned upon his faithful performance of all covenants and conditions herein agreed upon by him to be made and performed, . . ."

"The Dealer shall have the right to make his own adjustments in said Counties, State of Washington, during the existence of this contract and the Company hereby obligates itself to respect same. The Company also guarantees all tires, tubes and casings to be in good condition and to make good all defects therein due to defective manufacture.

"The Company agrees to respect and allow any and all settlements by adjustments with customers for tires which are turned in for adjustment due to defective manufacture of said tire.

"The Company . . . shall in every way co-operate with said dealer in increasing to the maximum the distribution of said tires."

From time to time thereafter up until the latter part of September, 1920, the Spokane company shipped and invoiced to the Mt. Vernon company a large number of tires, charging it therefor the aggregate of $7,702.76, which aggregate charge would have been a reasonable charge and the market value of the tires so furnished,

as contemplated by the terms of the contract, had the tires been of the quality contemplated by the terms of the contract.

Touching the question of the breach of the contract by the Spokane company, by reason of the inferior quality of tires so furnished, and the damages resulting therefrom to the Mt. Vernon company, the trial court found as follows:

"That said tires and tubes so delivered by said defendant to the plaintiff instead of being in good condition and of good manufacture, and instead of being of the kind and quality warranted by the terms of said contract, were in fact, of very faulty manufacture and defective and their condition was such that they were wholly useless for the purposes for which intended and they had no market value, excepting only what might be obtained for them as junk, which amount did not exceed the sum of $250, which was their reasonable market value at the time and place of delivery.

"That on account of the defective condition of said tires and tubes, as aforesaid, the plaintiff was damaged in an amount representing the difference between the said sum of $7,702.76, hereinabove referred to, and said sum of $250, or to-wit, the sum of $7,452.76, from which there should be deducted the sum of $1,804.83, representing the balance of purchase price unpaid on said tires and tubes (the amount paid by plaintiff on said tires and tubes being $5,897.93) and the sum of $478.15 representing invoice value of tires & tubes returned and leaving a net damage on this item to said plaintiff in the sum of $5,169.78.

"That at the time of the making of said contract it was contemplated between the parties thereto that the plaintiff should establish sub-agencies throughout the territory described therein, and sell said tires and tubes in part through sub-dealers, and should likewise sell directly to the trade, from an office or place of business to be established in the city of Mt. Vernon, in said Skagit County, Washington; that in accordance with such intent and purpose the plaintiff did establish

a place of business at said city of Mt. Vernon and did likewise obtain numerous sub-dealers throughout the territory described in said contract, and in connection therewith incurred the following expenditures, which were reasonably within the contemplation of the parties at the time of the making of said contract, to wit: [Here follow items aggregating $2,731.16.] That all of said sums were expended by the plaintiff in the sale of said Perfection tires and tubes, as contemplated in said contract, and in reliance upon and in fulfillment of the agreements therein contained.

"That said tires and tubes were in part placed upon the market in the territory described in said agreement by the plaintiff, personally, as well as through its sub-dealers, but on account of their said defective condition the market was within a very short time completely destroyed; the sub-dealers canceled their contracts and the users of tires and tubes refused to consider the purchase, or in many instances, the replacement of said Perfection tires and tubes, and as a result thereof the plaintiff's business in said Perfection tires and tubes was wholly and totally destroyed, and the sum of money represented in the amount above given as expended in connection with the sale of said Perfection tires and tubes in reliance upon said contract and agreement, was wholly and irrevocably lost to the plaintiff and it has, therefore, suffered special damage on this item in said sum of $2,731.16; that the total damages suffered by the plaintiff on account of the breach of warranty on the part of said defendant, as aforesaid, and the sale to it of said defective tires and tubes, is the sum of the two items above given, or $7,900.94."

Touching the question of the liability of the Iowa company because of its having taken over the business and property of the Mt. Vernon company, the court found as follows:

"That the said defendant, Perfection Tire & Rubber Co., a corporation, is and was the manufacturer of Perfection tires and tubes, and on or about the 15th

day of November, 1920, the said Perfection Tire Corporation of Washington, was indebted to it on account of tires and tubes delivered in a large amount; that at said time, the said defendant, Perfection Tire Corporation of Washington, a corporation, was in failing circumstances and either insolvent or in imminent danger of insolvency, all of which was well known to said defendant, Perfection Tire & Rubber Co., a corporation; that on or about the 15th day of November, 1920, without any additional consideration passing, excepting whatever preexisting indebtedness it had upon that date, the said Perfection Tire & Rubber Co. took over all the accounts, business and assets of the said Perfection Tire Corporation of Washington, a corporation, and said Perfection Tire Corporation of Washington conveyed to the said Perfection Tire & Rubber Co., a corporation, all the assets of the said Perfection Tire Corporation of Washington, a corporation, including not only its physical assets and property of every name and nature whatsoever, but also all accounts receivable, good-will, contracts, and agencies throughout the state of Washington, the said Perfection Tire & Rubber Co., a corporation, keeping the same organization, personnel, officers, offices, etc., as the Perfection Tire Corporation of Washington, a corporation, and in all respects completely succeeded to, conducted and handled the business of the said Perfection Tire Corporation of Washington, a corporation; the said last named corporation being by the transfer of its assets and business, as aforesaid, completely absorbed by the said defendant, Perfection Tire & Rubber Co., a corporation.

"That no assets of any kind whatsoever remain or remained after said assignment and consolidation to the said Perfection Tire & Rubber Co., that the said Perfection Tire Corporation of Washington, a corporation, at the time of said transfer, assignment and consolidation to said Perfection Tire & Rubber Co., a corporation, had assets in large and substantial amounts, aggregating in the neighborhood of $180,-000.''

· It is strenuously contended that the tires furnished
were not of quality inferior to that contemplated by
the contract, in any substantial degree, and that the
trial court erred in finding as it did touching that ques-
tion. We have painstakingly read the evidence and
deem it sufficient to say that we think the court's find-
ings on that question seem well supported by the evi-
dence, except as hereinafter noticed. To review the
evidence here, with a view of demonstrating that it
does not preponderate against the trial court's find-
ings, would be but to unduly extend this opinion to no
useful purpose. We here also observe that we are of
the same opinion with reference to the trial court's
findings of fact touching the question of the liability of
the Iowa company.

It is contended in behalf of the Spokane and Iowa
companies that the Mt. Vernon company can, in no
event, be awarded recovery by way of damages, since
its only remedy, by the terms of the contract, is that
it have such tires as proved defective replaced by
others to be furnished on proper demand made in that
behalf. Counsel invoked the general rule that, when
a contract of this nature specifies the remedy of re-
placement of defective articles or parts of that which
has been sold, as an exclusive remedy, the purchaser
must make demand accordingly and have such demand
refused before he can recover damages for a breach
of the contract resulting from failure of the quality of
the thing or things sold. We may concede for present
purposes that the Spokane company at no time refused
to replace defective tires by the furnishing of others
of apparent good quality when demand therefor was
made upon it by the Mt. Vernon company; a limited
number of such demands being made. This, however,
we think is a question of whether or not the contract

does specify replacement as an exclusive remedy available to the Mt. Vernon company, with that degree of certainty required to so limit that company to that remedy. Now, the only language in the contract at all touching this question is the following:

"The Dealer shall have the right to make his own adjustments in said Counties, State of Washington, during the existence of this contract and the Company hereby obligates itself to respect same. The Company also guarantees all tires, tubes and casings to be in good condition and to make good all defects therein due to defective manufacture.

"The Company agrees to respect and allow any and all settlements by adjustments with customers for tires which are turned in for adjustment due to defective manufacture of said tire."

We are unable to see in this language any plainly expressed intent to compel the Mt. Vernon company to resort exclusively to the remedy of replacement; but see therein only the intent to give it permission so to do. This seems to be a somewhat common provision in tire distributing contracts; made in view of the fact that even the best makes of tires will on rare occasions, have defective tires among shipments thereof of any considerable numbers; and when such occasionally defective tires appear, the dealer would quite probably prefer having replaced by perfect tires to his customers, and thereby better preserve the reputation of the particular make of tires in which he is dealing. But that does not mean that he is obliged to resort to that remedy unless the contract by unmistakable terms so provides. The findings of the court in this case, touching the quality of the tires here in question, shows, we think, a failure of quality far beyond what would ordinarily be contemplated as being effectively cured by a mere replacement, even if replacement was intended to be in some measure an exclusive remedy. We

would be slow, indeed, to hold that the Mt. Vernon company's only remedy was by replacement, under the circumstances here shown. The want of proper quality in the tires had manifestly become so marked and so well known within the Mt. Vernon company's territory as to render it impossible for it to profitably continue to dispose of the tires to any considerable extent in that territory. The law, we think, is well settled as stated by the learned editors in their note in L. R. A. 1916D 997 to *Hauss v. Surran,* decided by the Kentucky court, which case may also be found in 168 Ky. 686 and 182 S. W. 927, as follows:

". . . a provision in a contract of sale, permissive in form, and authorizing the seller to return the property for a breach of warranty, furnishes merely an additional remedy, and not a remedy in exclusion of those ordinarily existing, and that hence a seller may retain the article and assert the breach in recoupment in an action for the purchase price, is supported by the great weight of authority. . . ."

See, also, *Detwiler v. Downes,* 119 Minn. 44, 137 N. W. 422, 50 L. R. A. (N. S.) 753, and note in the last cited volume. Also, 35 Cyc. 438. We are of the opinion that the terms of this contract do not restrict the Mt. Vernon company to the remedy of replacement of the tires, especially under the circumstances of this case; and that the trial court, under the evidence, was fully warranted in finding that that company was damaged in a substantial sum by reason of the tires furnished it being in a very large degree defective and inferior in quality to that contemplated by the contract; though, as we shall presently notice, we do not agree with the trial court as to the reasonable value of the tires it received and did not return to the Spokane company.

It is contended in behalf of the Iowa company that it should not be held liable in this action and have a money judgment rendered against it therein; but that the Mt. Vernon company should, in any event, be required to resort to a suit in equity for an accounting by the Iowa company for whatever property of the Spokane company the Iowa company took over; and look to the Iowa company only as a trustee for the benefit of all creditors of the Spokane company. We are of the opinion, however, that, while the Iowa company might be held as trustee of the property it took over from the Spokane company, it can also be held as being personally obligated to pay all the debts and obligations of the Spokane company existing at the time its business organization and its property were taken over by the Iowa company. We think the taking over of the Spokane company by the Iowa company was so complete as to in fact absorb the Spokane company and continue the business of that company. Whether or not it was properly done under the forms of law is of no consequence here. It is enough for us to know that the Iowa company for all practical purposes assumed to become the successor of the organization, business and property of that company, and thereby impliedly assumed to pay all the obligations of that company existing at the time it was so taken over. The logic of our decision in *Jones v. Francis,* 70 Wash. 676, 127 Pac. 307, we think is all but conclusive against the Iowa company on this question. We have not overlooked some remarks in our decision in *Matson v. Kennecott Mines Co.,* 101 Wash. 12, 28, 171 Pac. 1040. There may be some observation made in that decision seemingly out of harmony with the conclusion we here reach, but the question there seems to have been an attempted compelling of an accounting by a

person and a corporation of property taken over from a defunct corporation; while in this case it is a question of the Iowa company rendering itself personally liable by reason of the manner of its taking over the Spokane corporation and its business and continuing the same, and of the Iowa corporation having by its acts impliedly assumed as its personal obligations the payment of all the obligations of the Spokane company. 7 R. C. L. 181 lends support to our conclusion that the Iowa company became personally liable in the sense that a money judgment might be recovered against it in this law action, as well as against the Spokane company, for the damages suffered by the Mt. Vernon company.

We now come to what is to us the most troublesome question in this whole controversy; that is, troublesome in so far as determining it with any degree of exactness is concerned; that is, the reasonable value of the tires retained or not returned to the Mt. Vernon company. A careful review of the evidence in this case convinces us that the trial court fell into error in finding all of the tires shipped to the Mt. Vernon company by the Spokane company and not returned to it were only of the reasonable value of $250. It appears that the Mt. Vernon company did, as a matter of fact, dispose of a large number of these tires in such a manner as to receive much more than $250 therefor, either through direct payment to it in part for such tires, or through exchange of other makes of tires with its customers. We do not lose sight of the rule invoked, that the Mt. Vernon company's damages cannot be so measured, according to some authorities; but its acquiring value for the defective tires in this manner has at least some tendency to show that they were of some considerable market value. Besides, there is some evidence in the record tending to show that the

tires were capable of being sold-as seconds, as defec-
tive tires are sometimes called, at something more
than a mere nominal value. It is true that the Mt. Ver-
non company had many tires returned to it which had
only the value of mere junk; but even these tires had
some miles of travel to their credit, the value of which
the Mt. Vernon company received in some measure.
To say that this $7,000 worth of tires, if they had been
of proper quality, are only in fact worth $250 is to
say that they were practically worthless. That they
were very bad is beyond question; but that they were
so nearly entirely worthless as to be of the market
value of only $250, we think cannot be held, under the
evidence given upon the trial. We conclude that these
tires were in fact of the reasonable value of $1,500, and
that therefore the item of $250, found by the trial
court as their value, should be increased to $1,500.
and that therefore the item of $250, found by the trial
court as their value, should be increased to $1,500.
This would reduce the Mt. Vernon company's recovery
by $1,250.

The items of recovery aggregating $2,731.16 awarded
to the Mt. Vernon company by the court as damages
by reason of expenditures made by the Mt. Vernon
company, as contemplated by the parties in making the
contract, the benefit of which became lost to the Mt.
Vernon company by reason of the very large degree of
failure of quality in the tires, we think the trial court
correctly allowed.

We conclude that the judgment should be reduced
in the sum of $1,250. The judgment of the trial court
is reversed, and the cause remanded to that court with
directions to enter a judgment in favor of the Mt. Ver-
non company, and against the Spokane and Iowa com-
panies, for the sum of $6,650.94, which shall bear in-
terest from the date of the remittitur from this court.

The Spokane and Iowa companies having obtained a more favorable judgment in this court than was rendered against them by the trial court, will recover their costs incurred in their appeal to this court.

MAIN, C. J., FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.