[No. 1554-1. Division One. July 2, 1973.]

DEERS, INC., *Appellant*, v. WILLIAM J. DERUYTER *et al.*, *Respondents.*

*Stern, Gayton, Neubauer & Brucker, P.S.,* and *O. J. Humphrey III,* for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long, Bettina B. Plevan,* and *Max D. Crittenden,* for respondents.

JAMES, J.—By this action Deers, Inc. seeks to recover a money judgment based on three promissory notes executed by William J. DeRuyter, purportedly on behalf of American Combining Corporation, a New York corporation.

In late 1969 Deers contracted to provide K-Pak Homes, Inc., a Washington corporation, with certain advertising and promotional material. The material was delivered but K-Pak Homes failed to pay when billed.

At approximately the same time American Combining began negotiations which resulted in its acquiring full ownership of First Republic Corporation, which was part owner of K-Pak Homes of America, a Nevada corporation and in turn parent to K-Pak Homes, Inc. American acquired independently other stock in K-Pak of America which gave it a controlling interest in that corporation. DeRuyter, one of the principals of the Seattle-based First Republic, was made a vice-president of American in charge of franchise operations (K-Pak Homes, Inc. and certain other First Republic subsidiaries were franchise-type operations) and a member of the Board of Directors of American. This arrangement was formalized on February 20, 1970.

In late April, 1970, one Litchenberger, a Deers representative who had learned of First Republic's interest in K-Pak Homes, Inc., visited the Seattle headquarters of First Republic and demanded payment of the K-Pak indebtedness. DeRuyter agreed to execute promissory notes securing payment of the indebtedness on behalf of American. No attempt was made on behalf of Deers to verify with Ameri-

can DeRuyter's authority to execute the notes. When the other directors of American learned of the execution of the notes, in May, 1970, the board met and refused to ratify DeRuyter's execution of the notes, and Deers was notified that American did not intend to honor the notes.

The trial judge, sitting without a jury, concluded that Deers could not recover from American because DeRuyter had no authority to execute the notes, and could not recover from DeRuyter personally because Deers never intended to hold him liable. We agree.

■ ■ On appeal, Deers first claims that the trial judge erred in concluding that DeRuyter was without authority to execute the notes on behalf of American. An agent's authority to bind his principal may be of two types: actual or apparent. Actual authority may be express or implied. 3 Am. Jur. 2d *Agency* § 68 (1962). Deers does not contend that DeRuyter was given express authority to execute the notes, but asserts that his authority was implied. Implied authority is "actual authority, circumstantially proven, which the principal is deemed to have actually intended the agent to possess." (Footnote omitted.) 3 Am. Jur. 2d *Agency* § 71 (1962). That the Board of Directors of American did not intend to grant to DeRuyter any implied authority to execute notes on behalf of American securing debts of K-Pak is demonstrated by the minutes of a meeting of the board on February 20, 1970, prior to the execution of the notes, *at which DeRuyter was present,* and at which

> [b]y unanimous vote, the Board agreed to keep the financial structure and funds of each subsidiary and division separate and distinct.

Deers argues, however, that DeRuyter was a de facto general manager of American's interests on the West Coast and cites authority to the effect that a general manager's implied authority is broad enough in scope to cover the transaction here. But the trial judge made no finding of fact that DeRuyter was a de facto general manager, and Deers assigns no error to his failure to so find.

■ In any event, Deers asserts, DeRuyter had apparent authority to execute the notes. Apparent authority exists

> when, though not actually granted, the principal knowingly permits the agent to perform certain acts, or where he holds him out as possessing certain authority; or, as sometimes expressed, when the principal has placed the agent in such position that persons of ordinary prudence are led to believe and assume that the agent is possessed of certain authority, and to deal with him on reliance of such assumption.

*Larson v. Bear*, 38 Wn.2d 485, 490, 230 P.2d 610 (1951). However,

> [f]acts and circumstances are sufficient to establish apparent authority *only* when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry. *Lamb v. General Associates, Inc.*, 60 Wn.2d 623, 374 P.2d 677 (1962), *and cases cited.*

(Italics ours.) *J & J Food Centers, Inc. v. Selig*, 76 Wn.2d 304, 309, 456 P.2d 691 (1969). Deers does not challenge the trial judge's finding of fact No. 10 that:

> Mr. Litchenberger did not telephone, wire or otherwise attempt to contact anyone at American Combining's sole place of business in New York to determine whether Mr. DeRuyter had any authority to sign promissory notes on behalf of the corporation. Mr. Litchenberger, an experienced businessman, knew that a corporation officer must have authorization of the Board of Directors before he may execute notes for the corporation.

Litchenberger was dealing with an officer of a corporation about which he knew very little. Finding of fact No. 8. In light of these facts, Deers' failure to verify DeRuyter's authority with American does not comport with "ordinary prudence." The trial judge correctly concluded that Deers failed to establish apparent authority in DeRuyter to execute the notes.

■ Deers next contends that the trial judge erred in refusing to find a de facto merger of K-Pak Homes and

American, and thus an implied assumption of K-Pak debts by American. In support of this assertion, Deers points out that paragraph 7 of an agreement between American, First Republic and K-Pak, dated February 19, 1970, states that "the active management and control of [K-Pak] shall be assumed by [American]." Deers cites as authority for this argument *Northwest Perfection Tire Co. v. Perfection Tire Corp.*, 125 Wash. 84, 94, 215 P. 360 (1923), wherein the parent company

> for all practical purposes assumed to become the successor of the organization, business and property of that company, and thereby impliedly assumed to pay all the obligations of that company existing at the time it was so taken over.

However, in support of its conclusion of an implied assumption of debts by the parent company, the court relied on the trial judge's finding of fact that

> [K-Pak's counterpart] conveyed to [American's counterpart] all the assets of [K-Pak's counterpart] including not only its physical assets and property of every name and nature whatsoever, but also all accounts receivable, good-will, contracts, and agencies throughout the state of Washington, . . .

*Northwest Perfection Tire Co. v. Perfection Tire Corp., supra* at 90. *Accord, Jones v. Francis,* 70 Wash. 676, 127 P. 307 (1912). There was no such wholesale transfer of K-Pak's assets and accounts to American here, and in view of the board's resolution "to keep the financial structure and funds of each subsidiary and division separate and distinct" and its prompt refusal to ratify DeRuyter's execution of the notes, no implied assumption of K-Pak debts by American. Deers' argument for "piercing the corporate veil" further misses the mark, for the reason that its suit was brought on the DeRuyter notes, and not on the K-Pak indebtedness.

■ Nevertheless, Deers asserts, American received "benefits" when the notes were executed on its behalf, and should be estopped from now claiming the notes are invalid. The benefits Deers claims American received are

first, an extension of the time for payment and Deers' forbearance from suit on the K-Pak indebtedness, and second, the advertising material itself. We agree that these were *potential* benefits to American, but Deers' claim here fails because American refused to take advantage of the proffered benefits. The first claimed benefit would not aid American: K-Pak, not American, was the debtor, and American's board expressly agreed to keep the finances of subsidiaries "separate and distinct." Moreover, as soon as American's board learned of the notes and the proffered benefit, it refused to ratify DeRuyter's act and rejected the benefit. As for the advertising material, it belonged to K-Pak and there was no evidence that American used the material in any way to benefit either itself or K-Pak.

In the alternative, Deers contends, DeRuyter should have been held personally liable on the notes, for the reason that he misrepresented his authority. In *Glendale Realty, Inc. v. Johnson,* 6 Wn. App. 752, 755, 495 P.2d 1375 (1972), the general rule is set forth as follows:

> An agent representing authority which exceeds his actual authority is personally responsible and liable to the party to whom he makes such an unauthorized representation if the other party justifiably relies upon the representation.

Quoting with approval *Zugsmith v. Mullins,* 86 Ariz. 236, 240, 344 P.2d 739 (1959), the court amplified the general rule:

> "A person with knowledge of facts which would reasonably require him to inquire as to the authority of an agent with whom he is contracting and who has means of making such inquiry, occupies the same position under the law as if he had actual knowledge of the agent's lack of authority because he is charged with knowledge of facts which such inquiry would have developed.

*Glendale Realty, Inc. v. Johnson, supra* at 757. Litchenberger had "knowledge of facts which would reasonably require him to inquire as to the authority of" DeRuyter and failed to do so. He did not justifiably rely on DeRuyter's representations.

246

Deers challenges several of the trial judge's findings of fact. These are, however, supported by substantial evidence and will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Finally, Deers claims that the trial judge abused his discretion when he awarded American $4,800 in attorney's fees pursuant to RCW 4.28.185, the long-arm statute under which Deers obtained service on American. American was required to retain local counsel, discuss pretrial matters by long distance telephone calls, and fly witnesses from New York for the trial. Under these circumstances, there was no abuse of discretion.

Respondent American Combining Corporation is awarded $500 as attorney fees on appeal. Affirmed.

SWANSON, C.J., and CALLOW, J., concur.

Petition for rehearing denied October 25, 1973.