FILED
COURT OF APPEALS
DIVISION II

2014 JUL 22 AM 10: 24

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CANTERBURY APARTMENT HOMES LLC, a Washington limited liability company, | No. 44545-0-II |
| Respondent, | |
| v. | |
| LOUISIANA PACIFIC CORPORATION, a Delaware corporation, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Louisiana Pacific Corporation (LP) appeals the trial court's denial of its motions for judgment as a matter of law and for a new trial after a jury found it liable to Canterbury Apartment Homes, LLC (Canterbury) in the amount of $755,314.17 for defective siding. First, LP argues the trial court erred when it concluded that the remedy listed in LP's 25-year written warranty (hereinafter "Limited Warranty") was not Canterbury's sole and exclusive remedy. Second, LP argues the trial court erred when it instructed the jury on failure of essential purpose for the remedy provided in the Limited Warranty. Finally, LP argues the jury instructions improperly required the jury to award damages outside the remedy listed in the Limited Warranty and that Canterbury presented insufficient evidence to support the jury's award of damages. Because the Limited Warranty does not contain an unmistakable expression that the exclusive remedy was contained therein, we hold Canterbury could avail itself of other remedies under Washington law. Next, we hold that the trial court erred by giving the failure of essential purpose instruction but because it did not prejudice LP, the error was harmless. Last, we hold that when read as a whole, the jury instructions properly instructed the jury on the law and that Canterbury submitted sufficient evidence to support the jury's damages award. We affirm.

## FACTS

I.   BACKGROUND

Canterbury is a 180-unit apartment complex constructed in 1995 with Inner-Seal siding manufactured by LP. The siding came with a written Limited Warranty that covered "against manufacturing defects under normal conditions of use and exposure" for 25 years if the siding was properly installed and maintained. Clerk's Paper's (CP) at 74.

A nationwide class settlement in 1996 (hereinafter "Settlement Agreement") involved the same LP siding and provided a process through which claimants with defective siding installed prior to January 1, 1996 could submit claims and receive compensation. The settlement class included "all Persons who have owned, own, or subsequently acquire Property on which Exterior Inner-Seal Siding has been installed prior to January 1, 1996." CP at 329. The Settlement Agreement provided that the "Agreement shall be the sole and exclusive remedy for any and all Settled Claims of Settlement Class members." CP at 345. The Settlement Agreement term ended January 1, 2003. Because the United States District Court for the District of Oregon recognized that some claimants' siding may become defective after the settlement term ended, it amended the Settlement Agreement so that settled claims did not include "claims made against L-P after the expiration of the term of the Settlement Agreement under the express terms of the L-P 25-year Limited Warranty issued with the product." CP at 264.

II.   EVIDENCE OF DAMAGE TO CANTERBURY'S SIDING

In December 2008, Ray Dally, the owner of Canterbury, noticed chunks of siding missing on one of the apartment buildings, mushrooms growing out of the siding, and areas of the siding becoming concave. When Dally later noticed more pervasive problems with the siding, he hired Qualified Envelope Diagnostics in spring 2011 to evaluate the siding and provide a report on its

condition. Erin Weatherspoon, a Qualified employee, first visited Canterbury on May 3, 2011, and then returned with two other Qualified employees later in the month to perform a four-day forensic evaluation of the siding. Weatherspoon testified that the siding was deteriorating, delaminating, splitting, that there was material loss and fungal growth, and that the deterioration "was pretty much everywhere" on the Canterbury buildings. II Report of Proceedings (RP) at 131.

On May 26, 2011, Canterbury sent LP a letter requesting, per the Limited Warranty, that LP inspect the siding within 60 days because Canterbury wanted to replace the siding.[1] In the letter, Canterbury included the information LP requested on its claim form and some pictures from Qualified's inspection. It also offered LP a copy of Qualified's report; however, LP never asked for the report. On June 8, Canterbury submitted the LP claim form/questionnaire to LP with another letter.

By August 10, Canterbury still had not heard from LP about scheduling an inspection so on that day Canterbury sent a letter to LP informing it that Canterbury planned to begin replacement of the siding on September 2. The third week of August, LP sent a third-party inspector to Canterbury to perform a two-day evaluation of the siding. The third-party inspector had to complete the inspection and evaluation of the building pursuant to a warranty inspector training manual LP created in 2003. The inspection protocol utilized at Canterbury differed from the inspection protocol used pre-2003, during the Settlement Agreement term.

After seeking bids from at least six companies, Canterbury began removal and replacement of the siding in September 2011. Canterbury hired Laer Enterprises which provided

---

[1] Dally testified that he wanted to start replacing the siding as soon as possible before the winter months.

the lowest bid. Anatoly Laer, Laer Enterprises's owner, testified that he replaced the siding with Hardie, fiber cement, siding. He started the job in September and finished in approximately April 2012. Laer testified that the LP siding had deteriorated and delaminated and that every wall of every building had some deteriorated siding. Laer and Dally also testified that because there was deteriorated siding on all walls and because of the siding's installation, they could not replace only the damaged siding. Instead, Laer testified that every board of siding above the deteriorated board had to be removed to get to the deteriorated board, so when there was deteriorated siding on a wall, he replaced the whole wall of siding.

When Canterbury started to remove the siding, Weatherspoon returned to evaluate the back of the siding boards. At that time, Weatherspoon contacted Warren Harris from Case Forensics to "characterize the composition and mode of failure of siding planks." III RP at 220. Canterbury also asked Harris to "assess the degree of damage and photographically document, memorialize the damage at the Canterbury Apartments," and "to investigate the adequacy of assessment by others." III RP at 220-21. Harris concluded there existed "dimensional instability between the rigid paper" on the siding and that the "mobile or moving woods fibers was incompatible." III RP at 238. Harris concluded that permanent damage to 70 percent of the siding existed.

After LP's August 2011 inspection, Canterbury finally heard from LP on October 12. LP offered Canterbury $8,363 for the damaged siding and claimed it found that damage existed in only 11 percent of the siding. Canterbury responded and objected to both the amount offered and the amount of damage LP found. It asked LP to explain the standards its inspector used to evaluate the siding. LP never responded to Canterbury's letter, never sent another inspector out, and never asked Canterbury to save any of the siding being replaced.

4

## II.  EVIDENCE OF AMOUNT OF DAMAGES

At trial, Canterbury did not produce records for the purchase price of the LP siding in 1995. Canterbury did proffer evidence that it paid Laer a total of $817,584.44 to replace the siding. It also paid a company $105,439.34 to paint the new siding. Additionally, Canterbury paid the county $16,893.11 for building permits to have the apartments re-sided. The replacement cost totaled $939,916.89.

LP testified it arrived at its claim for damages of $8,363 by resorting to the Limited Warranty that stated the remedy would be twice the retail cost of the original siding, less the aging deduction. LP used the highest amount its sales department had on record for the retail price before 1996, which was $0.52 per square foot. It then doubled the amount per the Limited Warranty to $1.04 per square foot. Lastly, LP calculated the aging deduction based on the number of years it had been since the siding was installed.

## III.  PROCEDURAL HISTORY

On November 11, 2011, Canterbury filed a claim for breach of written warranty, breach of warranties created by advertising or similar communications to the public, and violations of the Washington Consumer Protection Act. By order of the United States District Court for the District of Oregon, Canterbury and LP stipulated to a dismissal with prejudice of Canterbury's latter two claims.

LP filed a motion to enforce the settlement agreement and asked the federal court to order Canterbury to take no further steps to prosecute any released claims against LP. In its July 26, 2012, opinion the federal court concluded "that [Canterbury] is a class member and [Canterbury's] remedy, if any, is the 25-year warranty. L-P claims that [Canterbury] cannot pursue the warranty claim in state court, but the warranty does not contain any language

5

precluding state court action." CP at 32. LP then moved the federal court to enforce its July 26, 2012 order and hold that Canterbury's sole and exclusive remedy was the remedy provided in the Limited Warranty. The federal court stated that in its July 26, 2012 order it "did not make any determination concerning Canterbury's damages, only the claims it could pursue." CP at 109. The federal court then held that the "Washington state trial court is in the best position to interpret the warranty in light of Washington law, and to make rulings concerning Canterbury's remedies and damages." CP at 109.

Before trial, LP submitted a motion in limine to preclude Canterbury from introducing evidence regarding the amount of money it paid to replace the siding. LP argued that the Limited Warranty provided Canterbury's sole and exclusive remedy and evidence of replacement costs was irrelevant and prejudicial. The trial court denied LP's motion. The case proceeded to a jury trial. At the close of Canterbury's case and the close of its case, LP moved for judgment as a matter of law. It renewed its argument that Canterbury's sole and exclusive remedy was the remedy listed in the Limited Warranty. The trial court denied LP's motions.

Regarding the exclusivity of the Limited Warranty, the trial court concluded that the Limited Warranty did not provide Canterbury's sole and exclusive remedy because it did not contain unmistakable language that the stated remedy is the exclusive remedy: "In this warranty, L-P disclaims other warranties but does not clearly state that the remedy provided is the exclusive remedy. It certainly had the ability to include language which says that this is the sole and exclusive remedy, but it did not do that in this case." VI RP at 833. The trial court also stated that LP "holds all the cards" under the Limited Warranty; "[i]t determines, after the inspection and verification, if there is a failure under the warranty, according to the criteria and

6

the protocols that it has developed, . . . which were different, as has been pointed out at trial, from the protocols that were used under the class action lawsuit." VI RP at 833-34.

The trial court gave jury instruction 9, over LP's objection, which stated: "The limited remedy stated in the warranty is not the sole and exclusive remedy available under the warranty." CP at 198. Also over LP's objection, the trial court gave the following instruction (jury instruction 10) for calculating damages:

> It is the duty of the Court to instruct you as to the measure of damages. By instructing you on damages the Court does not mean to suggest the amount of any damages that should be awarded. With regard to the breach of warranty claim of Plaintiff, in your determination of damages, you are to use the following measure of damages in the amounts proved by Plaintiff:

> The difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

> The costs of repair and/or replacement may be evidence of the difference between the value of goods as accepted and their value as warranted.

CP at 199. Finally, the trial court instructed the jury as to failure of essential purpose of the remedy provided in the Limited Warranty, over LP's objection, in jury instruction 11:

> If the remedy provided in the warranty fails of its essential purpose, the remedy is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. The costs of repair and/or replacement may be evidence of the difference between the value of goods as accepted and their value as warranted.

> A limitation of remedies fails of its essential purpose when the limitation deprives a party of the substantive value of its bargain, or it fails to provide minimum adequate remedies.

CP at 200. The jury also had a copy of the Limited Warranty, and LP argued in closing that the jury should award damages according to the remedy stated in the Limited Warranty. LP never proposed an instruction regarding the remedy stated in the Limited Warranty.

LP also objected to Canterbury's proposed verdict form, which asked only for the jury's final damages calculation and proposed an alternate verdict form, which asked the jury to determine the amount of damaged siding and then the amount of damages. The trial court refused LP's proposed verdict form and concluded that it could be seen as a comment on the evidence.

The jury found for Canterbury in the amount of $755,314.17. LP renewed its motion for judgment as a matter of law and moved for a new trial on December 17, 2012. The trial court denied LP's motions. LP appeals.

## ANALYSIS

LP argues the trial court erred by denying its motions for judgment as a matter of law and for a new trial for three reasons. First, LP argues the trial court erred by instructing the jury that the remedy stated in the Limited Warranty was not the sole and exclusive remedy available to Canterbury. Second, LP argues the trial court erred by giving the jury the failure of an essential purpose instruction. Third, LP argues the trial court erred by rejecting its argument that no legally sufficient basis supported the jury's damages award. We disagree.

I. STANDARD OF REVIEW

We review a trial court's denial of a CR 50 motion for judgment as a matter of law de novo, engaging in the same inquiry as the trial court. *Schmidt v. Coogan*, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). Judgment as a matter of law is proper only when, viewing the evidence in the light most favorable to the nonmoving party, substantial evidence cannot support a verdict for the nonmoving party. *Schmidt*, 162 Wn.2d at 491, 493.

Generally, we review the denial of a new trial to determine if the trial court's decision is manifestly unreasonable, is exercised for untenable reasons, or is based on untenable grounds.

8

*Edwards v. Le Duc*, 157 Wn. App. 455, 459, 238 P.3d 1187 (2010). But when an error of law is cited as grounds for a new trial, we review the alleged error of law de novo. *Edwards*, 157 Wn. App. at 459. The error of law complained of must be prejudicial. *Dickerson v. Chadwell, Inc.*, 62 Wn. App. 426, 429, 814 P.2d 687 (1991).

II.     EXCLUSIVITY OF LIMITED WARRANTY REMEDY

LP argues that Canterbury's sole remedy is stated in the Limited warranty because (1) it should be read in conjunction with the Settlement Agreement; (2) based on the federal court's 2012 rulings, Canterbury is collaterally estopped from claiming another remedy; and, (3) the plain language of the limited warranty mandates this result.

Because the Limited Warranty does not contain an unmistakable expression that it is the exclusive remedy, Canterbury could pursue other available remedies under Washington law. Thus, we hold the Limited Warranty does not provide the exclusive remedy and the trial court correctly denied LP's motion for judgment as a matter of law on this issue.

A.     THE SETTLEMENT AGREEMENT DOES NOT STATE THE REMEDY PROVIDED IN THE LIMITED WARRANTY IS CANTERBURY'S EXCLUSIVE REMEDY

LP argues the Settlement Agreement and the Limited Warranty must be interpreted together and that the sole remedy available to Canterbury is pursuant to the express terms of the Limited Warranty. Because the federal court ordered that the Limited Warranty applied after the Settlement Agreement term ended, but made no legal determination as to the scope of the remedies available under the Limited Warranty, we disagree.

The Settlement Agreement states it "shall be the sole and exclusive remedy for any and all Settled Claims of Settlement Class members." CP at 345. An amendment to the Settlement Agreement stated that settled claims do not include "claims made against L-P after the expiration

9

of the term of the Settlement Agreement under the express terms of the L-P 25-year Limited Warranty issued with the product." CP at 264. The amendment to the Settlement Agreement further clarified the release of claims:

> The release in the Settlement Agreement is amended to exclude claims filed against L-P after the expiration of the Settlement Agreement by consumers under the terms of the L-P 25-year Limited Warranty. At the termination of the Settlement Agreement, L-P's 25-year Limited Warranty shall be in effect for the balance of its term when measured from the date of original installation of the claimant's siding.

CP at 268.

The Settlement Agreement did not specify the remedies available to a party under the Limited Warranty; it merely stated that at the conclusion of the Settlement Agreement period, parties may file a claim against LP under the Limited Warranty. And while the Settlement Agreement did state that the amendment to the Settlement Agreement was "fair, reasonable, and adequate and in the best interests of the Class," it did not specifically state that the remedy provided in the Limited Warranty was fair, reasonable, and adequate, or that it was the exclusive remedy under the Limited Warranty. CP at 259. Accordingly, when interpreted together LP's argument fails.

B. THE FEDERAL DISTRICT COURT RULINGS DO NOT STATE THE REMEDY PROVIDED IN THE LIMITED WARRANTY IS CANTERBURY'S EXCLUSIVE REMEDY

LP next argues the federal court's 2012 orders collaterally estop Canterbury from pursing any remedy other than the remedy provided in the Limited Warranty. We disagree. Because the federal court specifically ruled that the state court should rely on Washington law to determine the remedy provided in the Limited Warranty, this argument fails.

Canterbury initially filed four claims against LP. In its complaint, Canterbury specifically claimed LP should be responsible for the full cost of repair and/or replacement of the

10

siding as provided by Washington law. It alleged that the Limited Warranty did not contain express language stating the Limited Warranty's remedies were exclusive. In ruling on LP's motion to enforce the Settlement Agreement, the federal court concluded "that [Canterbury] is a class member and [Canterbury's] remedy, if any, is the 25-year warranty. L-P claims that [Canterbury] cannot pursue the warranty claim in state court, but the warranty does not contain any language precluding state court action." CP at 32.

LP then moved the federal court to enforce its July 26, 2012 order and hold that Canterbury could avail itself of only the remedy stated in the Limited Warranty. The federal court held that it "did not make any determination concerning Canterbury's damages, only the claims it could pursue," and the "Washington state trial court is in the best position to interpret the warranty in light of Washington law, and to make rulings concerning Canterbury's remedies and damages." CP at 109. Thus, the federal court did not conclude whether the remedy provided in the Limited Warranty is exclusive. Instead, the federal court ordered Canterbury to dismiss all of its claims against LP except its claim for breach of the Limited Warranty. It allowed the trial court discretion to interpret Washington law to determine the specific remedies and damages available under the Limited Warranty. Thus, we hold Canterbury is not collaterally estopped from pursuing remedies other than the remedy listed in the Limited Warranty because the federal court did not decide this issue.

C.   THE LIMITED WARRANTY DOES NOT STATE THE LISTED REMEDY IS THE SOLE
     AND EXCLUSIVE REMEDY

LP argues the language of the warranty itself demonstrates the parties' express intent that the listed remedy is the sole and exclusive remedy. Because the Limited Warranty does not clearly express that the listed remedy is the sole and exclusive remedy, we hold that the Limited Warranty does not provide Canterbury's exclusive remedy.

Parties may contract for an exclusive remedy for a breach of warranty. *Shepler Constr., Inc. v. Leonard*, 175 Wn. App. 239, 246, 306 P.3d 988 (2013) (citing *Graoch Assocs. #5 Ltd. P'ship v. Titan Constr. Corp.*, 126 Wn. App. 856, 865, 109 P.3d 830 (2005)). But "resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." RCW 62A.2-719(1)(b). The comments to subsection (1)(b) further clarify that "[s]ubsection (1)(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed." RCW 62A.2-719, UCC cmt. 2. Thus, "the contract must clearly indicate the parties' intent to make the stipulated remedy exclusive." *Shepler Constr.*, 175 Wn. App. at 246; *see also Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 522, 210 P.3d 318 (2009) ("[P]rovisions limiting remedies in a consumer transaction must be explicitly negotiated between buyer and seller and be set forth with particularity."); *Nw Perfection Tire Co. v. Perfection Tire Corp.*, 125 Wash. 84, 92, 215 P. 360 (1923) (a remedy is not exclusive "unless the contract by unmistakable terms so provides")).

Here, there is no unmistakable expression that the remedy listed in the Limited Warranty is the sole and exclusive remedy. The Limited Warranty warrants the siding "for a period of 25

years from the date of installation against manufacturing defects under normal conditions of use and exposure." CP at 74. It further provides that:

> L-P must be given a 60-day opportunity to inspect the siding before it will honor any claims under the above warranty. If after inspection and verification of the problem, L-P determines that there is a failure covered by the above warranty, L-P will refund to the owner an amount of money equal to twice the retail cost of the original siding material. The cost of labor and materials other than siding are not included. Warranty payments will be based upon the amount of affected siding material.
> During the first 5 years, L-P's obligation under the above warranty shall be limited to twice the retail cost of the siding material when originally installed on the structure.
> If the original siding cost cannot be established by the owner the cost shall be determined by L-P in its sole and reasonable discretion.
> During the 6th through 25th year, as determined in the above manner, warranty payments shall be reduced equally each year such that after 25 years from the date of installation no warranty shall be applicable.
>
> . . . .
>
> Except for the express warranty and remedy set forth above, L-P disclaims all other warranties, express or implied, including implied warranties of merchantability or fitness for a particular purpose.
>
> . . . .
>
> This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

CP at 74. This Limited Warranty provides only an optional remedy of "twice the retail cost of the original siding material," which "shall be reduced equally each year" under the aging deduction. CP at 74. But it contains no clear or unmistakable terms that the provided remedy is the sole and exclusive remedy.

Our Supreme Court has held that where a written warranty guaranteed "all tires, tubes and casings to be in good condition and to make good all defects therein due to defective manufacture," the written replacement remedy was not exclusive but permissive because an injured party is only obliged to resort to the listed remedy if the "contract by unmistakable terms so provides." *Nw Perfection Tire*, 125 Wash. at 92; *see also Graoch*, 126 Wn. App. at 865-66

(holding that one year warranty not an exclusive remedy for defective construction where the contract did not so state). Like the warranty in *Northwest Protection Tire*, the Limited Warranty here contains no unmistakable terms that the listed remedy is the exclusive remedy; rather, it merely provides a permissive remedy if siding fails under the express warranty. Further, the Limited Warranty specifically references that parties may have other rights under state law. Thus, while LP certainly provided a limited warranty for the siding by specifically listing what the express warranty covered and disclaiming all other warranties, it did not provide for a limited and exclusive remedy for failure of the siding under the express warranty.

Accordingly, the listed remedy is presumed optional and not exclusive. *See* RCW 62A.2-719(1)(b). We hold the remedy listed in the Limited Warranty is not exclusive, Canterbury had the right to pursue remedies and damages available under state law, and the trial court properly denied LP's motions for judgment as a matter of law and a new trial regarding this issue.

III. FAILURE OF ESSENTIAL PURPOSE

LP next argues the trial court erred by instructing the jury on failure of essential purpose. Although the trial court erred by giving a failure of essential purpose instruction, the error was harmless.

We review alleged errors of law in jury instructions de novo. *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 210, 87 P.3d 757 (2004). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

Under the UCC, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title." RCW 62A.2-719(2).

Because the trial court had already decided as a matter of law that the Limited Warranty remedy was not exclusive and gave such an instruction to the jury, the trial court erred in also giving the failure of essential purpose instruction. Failure of essential purpose is relevant only with an "exclusive or limited" remedy. *See* RCW 62A.2-719(2).

"An erroneous jury instruction is harmless if it is 'not prejudicial to the substantial rights of the part[ies] . . . , and in no way affected the final outcome of the case.'" *Blaney*, 151 Wn.2d at 211 (alteration in original) (quoting *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947)). Whereas, a prejudicial error "affects or presumptively affects the results of a case, and is prejudicial to a substantial right." *Blaney*, 151 Wn.2d at 211. When evaluating an erroneous instruction, we presume the error is prejudicial "subject to a comprehensive examination of the record." *Blaney*, 151 Wn.2d at 211.

Scrutiny of the record in this case reveals that the erroneous failure of essential purpose instruction was harmless because LP suffered no prejudice. The method to calculate damages for failure of essential purpose was the same calculation the jury used to calculate the damages it found. Here, if the jury decided to not award damages under the remedy provided in the Limited Warranty, the trial court instructed that it could award damages under RCW 62A.2-714(2), which provides: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." The trial court also instructed the jury that if it determined that the remedy provided in the Limited Warranty failed its essential purpose, then it was instructed that it should calculate damages in the following manner:

15

> [T]he difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. The costs of repair and/or replacement may be evidence of the difference between the value of goods as accepted and their value as warranted.

CP at 200. Accordingly, because the substantive outcome, the manner in which the jury calculated damages, is the same regardless of the failure of essential purpose instruction, the erroneous instruction was harmless.

IV. SUFFICIENT BASIS FOR DAMAGES

Lastly, LP argues (1) the jury instructions required the jury to award damages beyond the express terms of the Limited Warranty, (2) Canterbury offered no evidence of damages under the measure provided by the UCC, (3) replacement cost cannot be used as a measure for damages, and (4) the verdict form was insufficient and misleading.

A. JURY INSTRUCTIONS

LP argues "Jury Instruction No. 10 tied the jury's hands, forcing a damages award in excess of the one provided under the Limited Warranty, and was therefore in error." Appellant's Br. at 44. We disagree. "'Parties are entitled to instructions that, when taken as a whole, properly instruct the jury on the applicable law, are not misleading, and allow each party the opportunity to argue their theory of the case.'" *State v. Ridgley*, 141 Wn. App. 771, 779, 174 P.3d 105 (2007) (quoting *State v. Redmond*, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003)).

Jury instruction 10 provided:

> It is the duty of the Court to instruct you as to the measure of damages. By instructing you on damages the Court does not mean to suggest the amount of any damages that should be awarded. With regard to the breach of warranty claim of Plaintiff, in your determination of damages, you are to use the following measure of damages in the amounts proved by Plaintiff:

> The difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

> The costs of repair and/or replacement may be evidence of the difference between the value of goods as accepted and their value as warranted.

CP at 199. Jury instruction 9 provides: "The limited remedy stated in the warranty is not the sole and exclusive remedy available under the warranty." CP at 198.

LP argues the trial court did not instruct the jury on the method to calculate damages under the Limited Warranty remedy. But, LP did not propose such an instruction. Further, when read as a whole, these jury instructions correctly stated the applicable law. The instructions properly instructed the jury that the Limited Warranty remedy was not the sole and exclusive remedy. The instructions did not state that the Limited Warranty remedy was not available, only that if it chose to award damages outside the Limited Warranty remedy, the jury was to use the measure of damages provided in jury instruction 10. Further, the instructions as a whole allowed each party to argue their theory of the case and damages. LP did argue its theory of damages. VII RP at 883 ("It is that warranty, that when you go back to the jury room, [LP] will ask that you follow the remedy in the warranty and make your decision on the amount of damages that [Canterbury] should be awarded."), VII RP at 902 ("Also what you could do, as part of your—as a damages calculation would be to follow the warranty. You are familiar with Exhibit 9, the warranty. The stated remedy is a refund to the owner of the amount of money equal to twice the retail cost of the original siding material."), VII RP at 910 ("We ask when you go back to the jury room, you follow the warranty remedy."). Accordingly, the jury instructions did not require the jury to award damages outside the warranty remedy and LP's argument fails.

17

B.    DAMAGES AWARD IS SUPPORTED BY THE LAW AND SUFFICIENT EVIDENCE

LP next argues Canterbury failed to offer evidence of the difference between the value of the siding as accepted and the value of the siding as warranted, and that the trial court improperly allowed evidence of replacement costs.  Because repair and/or replacement costs are a proper measure of damages under the UCC and Canterbury presented evidence of the costs to replace the defective siding, the damages award is supported by the law and by sufficient evidence.

Under RCW 62A.2-714(2), the cost of repair or replacement can be used to measure the difference in value as is and as warranted. *Miller v. Badgley*, 51 Wn. App. 285, 296 n.6, 753 P.2d 530 (1988) (citing J. White & R. Summers, *Uniform Commercial Code* § 10-2, at 377 (2d ed. 1980)).  Our Supreme Court also stated that repair costs may be used as a measure of damages:

> Courts generally recognize that "[r]epair costs are an appropriate alternative measure of damages for breach of warranty." *Miller v. Badgley*, 51 Wn. App. 285, 296, 753 P.2d 530, *review denied*, 111 Wn.2d 1007 (1988); [2 Roy R. Anderson, *Damages Under the Uniform Commercial Code* § 10:06, at 16 (1992)] ("[T]he overwhelming judicial consensus has been that [repair] costs are strong evidence of the difference between the value of the goods as accepted and their value as warranted."); [1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 10-2, at 504-05 (3d ed. 1988)] (noting that repair costs may be a "useful objective measurement of the difference in value", but pointing out that the measure has "limitations").

*Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 440, 886 P.2d 172 (1994).  Further, LP acknowledged that the cases recognize repair costs as a measure of damages, and specifically objected only to the use of replacement costs to calculate damages.  But, here, it was not possible to repair the defective siding without replacing it.   And we find no distinction between repair and replacement in the context of defective siding that cannot be repaired without replacing it.

18

Accordingly, it was proper to allow evidence of Canterbury's replacement costs to prove damages under RCW 62A.2-714(2).

Further, Canterbury presented sufficient evidence of its damages. Canterbury presented evidence of the damage to the siding through expert testimony. It also presented evidence that because of how the siding had been installed, replacement of only the defective boards would not be possible. Canterbury provided evidence of the lowest bid it received to replace the siding, the costs the company charged to remove the old siding and install new siding, the costs to have the new siding painted, and the county permit and charge for the permit to have the siding work completed. Thus, Canterbury presented sufficient evidence to support the jury's damages award.

C.    VERDICT FORM

Finally, LP argues the verdict form was insufficient and misleading because it asked the jury to provide only the amount of damages it awarded. To support its argument, LP cites one case, *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 539, 70 P.3d 126 (2003), which concludes that "where a general verdict is rendered in a multitheory case and one of the theories is later invalidated, remand must be granted if the defendant proposed a clarifying special verdict form."

The verdict form here asked the jury to provide the amount of damages it awarded. As we have discussed, the jury instructions were not misleading and, the jury could have awarded damages under the Limited Warranty remedy or the jury instruction 10 remedy. The verdict form here did not improperly compel the jury to choose one damages calculation over the other. It merely asked the jury to provide its final damages calculation. Further, LP's proposed verdict form would not have provided any clarification regarding the jury's damage award. Thus, we hold the court did not err by providing the jury with this verdict form.

Because the Limited Warranty does not contain an unmistakable expression that the exclusive remedy is contained therein, we hold Canterbury could avail itself of other remedies under Washington law. Next, we hold that the trial court erred by giving the failure of essential purpose instruction but because it did not prejudice LP, the error was harmless. Last, we hold that when read as a whole, the jury instructions properly instructed the jury on the law and Canterbury submitted sufficient evidence to support the jury's damages award. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.