[No. 4908–6–III.   Division Three.   May 26, 1983.]

ICD Export Corporation, *Appellant,* v. Schmidt Brothers, et al, *Respondents.*

*Joel C. McCormick III, Winston & Cashatt, Stephen G. McLean,* and *Studley, Purcell, Frey, Spencer & Kenny,* for appellant.

*Lawrence Cary Smith,* for respondents.

Munson, A.C.J.—ICD Export Corporation appeals a jury verdict in favor of Schmidt Brothers on a breach of contract action. The issues are: whether the court erred in denying ICD's motion for partial directed verdict with regard to authority of Mr. Jess to receive notice of an anticipatory repudiation so as to bind ICD to such notice; and whether ICD was licensed to do business in Washington. We affirm.

Early in the 1977 growing season, Schmidt Brothers discussed a contract for the sale of lentils with Mr. Jess. It was not aware at that time that Mr. Jess was contemplating

obtaining the contract on behalf of ICD. Schmidt Brothers first learned the contract was to be with ICD when it received a copy of the written contract from ICD for signature. Schmidt Brothers signed the contract and mailed it to ICD in New York. On June 26, 1977, the Schmidts informed Mr. Jess they could not meet their obligation under the contract and ICD should obtain lentils elsewhere. Apparently Mr. Jess failed to relay this information to ICD because in August, ICD made repeated requests to Schmidt Brothers for delivery of the lentils. When Schmidt Brothers failed to comply, ICD covered by purchasing lentils from another source on August 18, 1977, at a cost of $22,500 in excess of the agreed contract price between ICD and Schmidt Brothers.

Thereafter, ICD filed an action alleging breach of contract and a motion for summary judgment, which was granted. Schmidt Brothers appealed and this court affirmed in part, reversed in part and remanded for trial. On remand, the trial court permitted Schmidt Brothers to amend its answer which alleged ICD was precluded from maintaining the action because it was not licensed to do business in Washington. The trial court granted ICD's motion for summary judgment on all issues raised in the amended answer except for the issue of the propriety and timeliness of ICD's cover. Before submitting the issue of cover to the jury, ICD moved for a partial directed verdict on the issue of Mr. Jess' authority to receive notice of Schmidt Brothers' anticipatory repudiation. The motion was denied and the jury returned a verdict for Schmidt Brothers.

ICD contends no evidence was presented showing Mr. Jess was acting within the scope of his authority when he received the notice of Schmidt Brothers' anticipatory repudiation; and, therefore, the court erred in submitting the issue to the jury.[1] While it is true the burden of estab-

---

[1] ICD objected to jury instruction 7 which reads:

"Plaintiff, ICD Corporation, is a corporation. A corporation can act only

lishing the authority of an agent is upon the one who asserts it, *Hatten Mach. Co. v. Bruch,* 59 Wn.2d 757, 762, 370 P.2d 600 (1962); *Olsson v. Hansen,* 50 Wn.2d 199, 202, 310 P.2d 251 (1957), the trier of fact determines whether an agent has actual or apparent authority dependent upon the circumstances. *Barnes v. Treece,* 15 Wn. App. 437, 443, 549 P.2d 1152 (1976). Furthermore, "[o]ne dealing in good faith with an agent who appears to be acting within the scope of his authority is not bound by undisclosed limitations on the agent's power." *Walker v. Pacific Mobile Homes, Inc.,* 68 Wn.2d 347, 351, 413 P.2d 3 (1966).

> A principal may be estopped to deny that his agent possesses the authority he assumes to exercise, where the principal knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he possesses the authority exercised, and avails himself of the benefit of the agent's acts.

*Equico Lessors, Inc. v. Tow,* 34 Wn. App. 333, 338, 661 P.2d 597 (1983) (quoting *Lamb v. General Assocs., Inc.,* 60 Wn.2d 623, 627–28, 374 P.2d 677 (1962)). Restatement (Second) of Agency § 268 (1958) provides in part:

> [A] notification given to an agent is notice to the principal if it is given:
> (a) to an agent authorized to receive it;
> (b) *to an agent apparently authorized to receive it*;

(Italics ours.)

Mr. Jess testified he was employed by ICD in 1977 as a buyer with an office in his home. He generally bought from commercial suppliers and warehouses throughout the Northwest, but entered into a contract to buy directly from

---

through its agents. An agent is a person employed under an express or implied agreement to perform services for another called the principal. Any act or omission of an agent within the scope of authority is the act or omission of the principal. An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent or which were expressly or impliedly required by the contract of employment.

"Defendant, Schmidt Bros., is a partnership. An act or omission of a partner within the scope of the partnership business is the act or omission of all partners."

the Schmidts as farmers because they were personal friends. Mr. Jess did keep track of growing conditions through the warehouses and suppliers and talked with ICD in New York daily to keep it abreast of the general trend.[2] Based on this evidence and the surrounding circumstances, *i.e.*, Mr. Jess was ICD's only agent or employee in the Pacific Northwest area in daily contact with ICD, the trier of fact could find Mr. Jess had apparent authority to receive Schmidt Brothers' anticipatory repudiation of its contract with ICD.[3] The court did not err in submitting the issue of Mr. Jess' authority as ICD's agent to the jury.

Affirmed.

GREEN and McINTURFF, JJ., concur.

---

[2]Pursuant to RAP 9.3, only a narrative report of proceedings was submitted on appeal by ICD. No objection to the narrative report was filed by Schmidt Brothers as required by RAP 9.5; therefore, it comprised the entire record on appeal. The narrative report of proceedings stated:

> Mr. Jess testified that he was employed by ICD in 1977. No further testimony was elicited from any witness relating to what Mr. Jess' authority, scope of employment, duties, or relationship was with ICD, and no testimony was elicited that Mr. Jess ever conveyed the information that he received on June 26, 1977, to anyone within ICD.

However, this court, pursuant to RAP 9.10, which states: "[T]he appellate court may, on its own initiative . . . direct the supplementation or correction of, the report of proceedings", requested a transcript of Mr. Jess' testimony at trial.

[3]The jury answered a special interrogatory finding notice was given Mr. Jess on June 26, 1977.