[No. 52943–4.   En Banc.   February 12, 1987.]

LAURA MAHONEY, *Respondent,* v. A. N. SHINPOCH, *as Secretary of the Department of Social and Health Services, Appellant.*

680

*Kenneth O. Eikenberry, Attorney General,* and *Charles F. Murphy* and *James R. Watt, Assistants,* for appellant.

*Judith Klayman* and *Barbara A. Isenhour* of *Evergreen Legal Services,* for respondent.

PEARSON, C.J.—This case grows out of a challenge to rulemaking instituted by the Department of Social and Health Services (DSHS). The plaintiff, a class of public assistance recipients, sought declaratory and injunctive relief through the invalidation of a DSHS rule reducing

certain state–funded benefits. After cross motions for summary judgment, the trial court found in favor of the plaintiff class, and it is from that order that DSHS appeals. This court accepted certification pursuant to RCW 2.06.030, and we affirm.

## FACTS

The State of Washington provides public assistance to needy blind, elderly, and disabled persons in the form of State Supplemental Payments (SSP). Although the assistance is funded by the State, it is administered by the federal Social Security Administration in conjunction with the distribution of federal Supplemental Security Income (SSI) benefits. DSHS is charged with informing the Social Security Administration of those SSI recipients who are to receive the State's SSP benefits, and the federal agency then distributes both benefits in a single check.

Congress provided that, effective January 1, 1986, recipients of the federal SSI benefits would receive a cost–of–living adjustment (COLA) increase of approximately 3 percent. In 1983, Congress had passed amendments to the Social Security Act permitting states to reduce their SSP benefits by part or all of the amount of federal COLA increases in SSI benefits, as long as the SSP benefits did not fall below an established floor. *See* 42 U.S.C. § 1382f, g (Supp. 1982). DSHS contends that in its 1985 session the Washington Legislature took advantage of the amendments and reduced its own benefits, the SSP benefits, by the amount of the SSI COLA increase. As a consequence, persons receiving both the SSI and SSP benefits could expect to see virtually no net change in their benefit checks, the SSP reduction cancelling out the SSI COLA increase. The State, however, would realize a $6 to $8 million saving.

The working papers prepared by the Senate and House Ways and Means Committees and the Governor's proposed budget contain indications of an intent to reduce SSP benefits by the amount of the federal COLA increase. There was no floor debate on the reduction, and the appropria-

tions bill did not expressly address the SSP benefits, although it did expressly specify changes in several other benefits. *See* Laws of 1985, 1st Ex. Sess., ch. 6, § 208, p. 2333. The bill consisted primarily of a lump sum appropriation to DSHS for its income assistance programs, with no mention of individual line item amounts for the various categories of benefits.

On October 18, 1985, pursuant to rulemaking procedures, DSHS filed notice of its intent to adopt a rule reducing the SSP benefits by a maximum of 3.5 percent. The notice indicated that a hearing would be held on November 26, 1985, to allow public comment on the intended reduction and that written comments should be submitted on or before that date. The notice also indicated that a formal decision on adopting the rule would take place on December 2, 1985. On November 7, 1985, 20 days after the notice was filed but 19 days before the hearing, DSHS wrote to the Social Security Administration that "the state is opting to revise the SSP per the Social Security Amendments of 1983." Subsequently, but also prior to the November 26 hearing, the Social Security Administration notified SSP recipients that their 1986 benefits would reflect DSHS' intended reduction.

Prior to the hearing, DSHS received a letter submitted by Evergreen Legal Services, an organization representing a large number of SSP recipients. The letter argued against the proposed rule, claiming that the reduction would cause hardship to needy elderly and disabled persons. No oral testimony was presented at the November 26 hearing. The final rule was filed with the code reviser on December 5, 1985, in substantially the same form in which it had been proposed. The rule became effective January 1, 1986. *See* State Register 85–21–068 (1985); WAC 388–29–295.

The benefits in dispute here cover a period between January and April 1986. At the time it appealed the trial court's grant of plaintiff's summary judgment motion, DSHS initiated additional rulemaking—both emergency and permanent—to implement the SSP reduction. That

rulemaking was the subject of a second lawsuit[1] which resulted in the validation of the reduction. The benefits in the instant case, then, cover only the 4–month period between January 1, 1986, and the adoption of the emergency rule.

## I

DSHS raises two issues in this appeal: whether the rulemaking implementing the SSP reduction fell within the dominion of the Washington administrative procedure act (APA) and, if it did, whether the rulemaking was in compliance with the APA. Although we will address each of these issues, we note that the second issue is essentially a factual determination that has been settled by the narrative report of proceedings signed by the trial judge.

The standard of review on appeal of a summary judgment order is de novo; that is, the appellate court conducts the same inquiry as the trial court. *See Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 719 P.2d 120 (1986); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

The first issue is whether DSHS was required to follow the rulemaking procedures set forth in the APA, RCW 34.04, when it promulgated the rule effectuating the SSP reduction. The facts here are not in dispute, and thus we must determine whether the plaintiff was entitled to judgment as a matter of law.

■■ This court has held that in certain limited circumstances agency rulemaking is exempt from the APA's requirements. *Pannell v. Thompson,* 91 Wn.2d 591, 589 P.2d 1235 (1979). Rulemaking involving program funding is exempt when (1) the program is exclusively state funded and state administered; (2) the Legislature enacted "an express absolute limitation" on expenditures for the program; and (3) the limitation has been reached and the funds totally expended. *Pannell,* at 602. By setting an

---

[1] See Mahoney v. Shinpoch, Thurston County cause 86–2–01089–8.

absolute limit on the disbursement of an appropriation, the Legislature has *mandated* agency action, with the consequence that the APA's function of monitoring agency discretion has no relevance. *See Pannell,* at 601–02.

DSHS does not contend that the instant rulemaking falls squarely within the *Pannell* holding but argues instead that the principle underlying *Pannell* applies equally to this case. Appellant argues that because *Pannell* stands for the proposition that mandatory rulemaking should be exempt from APA requirements, the exemption should extend to appropriations rulemaking for which *the legislative history* mandates a particular line item appropriation or reduction, even in the absence of "an express absolute limitation" on the face of the enactment. As the trial court noted, DSHS' argument rests on two contentions: first, that the court should look beyond the face of the enacted bill, and second, that the legislative history of the appropriations bill evidences a mandate to the agency. We examine each of these contentions in turn.

The general rule of statutory construction is that a court should not look beyond the language of a statute unless the statute is ambiguous on its face. *Service Employees Int'l, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 348, 705 P.2d 776 (1985); *see also Clark v. Horse Racing Comm'n,* 106 Wn.2d 84, 91, 720 P.2d 831 (1986). Although the primary goal of statutory construction is to give effect to legislative intent, *see Clark,* the court will not add language to an unambiguous statute even if the court believes the statute failed adequately to express that intent. *Vita Food Prods. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978). It is beyond dispute that § 208, the appropriations bill section at issue here, contains no express mention— much less mandated reduction—of SSP benefits. In contrast, the section does expressly mention and alter other benefits, such as general assistance, consolidated emergency assistance, and refugee assistance benefits. *See* § 208(3) (stating that "[g]rant payment standards and vendor rates shall be increased by 3% on January 1, 1986 . . ."). The

principle "*expressio unius est exclusio alterius*" leads us to the same conclusion that the trial court reached: if the Legislature had wanted to mandate the SSP reduction, it would have used express language to that effect. *See Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 98, 459 P.2d 633 (1969). The absence of such language does not render the bill ambiguous. Under ordinary principles of construction, then, the reduction was not mandated.

This interpretation of § 208 comports with our prior understanding of legislative appropriations. *See Island Cy. Comm. on Assessment Ratios v. Department of Rev.,* 81 Wn.2d 193, 500 P.2d 756 (1972). In *Island Cy.,* the plaintiffs sought to compel the Superintendent of Public Instruction to disburse all the funds appropriated for their school district. In determining whether the distribution of the entire amount was mandatory, we looked to the language of the appropriations bill and the statutes establishing the Superintendent's duties. *See Island Cy.,* at 204. Although the statute establishing the Superintendent's duties stated that the Superintendent "*shall* distribute [funds] annually as provided [by a specified formula]" (italics ours), *Island Cy.,* at 194 (citing RCW 28A.48.010), the court concluded that the statute was mandatory only in the sense that the Superintendent "is not free to arbitrarily withhold distribution to school districts." *Island Cy.,* at 205. "An appropriation of public monies by the legislature is not a mandate to spend, rather it is an authorization given by the legislature to a designated agency to [*sic*] use not to exceed a stated sum for specified purposes." *Island Cy.,* at 204. Agencies "must have some discretion and leeway to avoid a potential deficiency . . . Thus . . . the Superintendent . . . is entrusted with sound discretion in this area." *Island Cy.,* at 205.

DSHS asks us, however, to construe appropriations bills differently from ordinary enactments. DSHS argues that appropriations bills cannot be understood without reference to legislative history and, in particular, to the working papers, preliminary budgets, and line item figures that

went into producing the total, lump sum amount approved by the Legislature. Concededly, DSHS has provided evidence that the Governor and the House and Senate Ways and Means Committees supported offsetting the SSP benefits by an amount equal to the SSI COLA increase. Arguments can be made that the passage of the appropriations bill intact represents legislative approval of the line item amounts producing those offsets. *Compare Scott v. Cascade Structures,* 100 Wn.2d 537, 544, 673 P.2d 179 (1983) (statements by chair of drafting committee probative of legislative intent) *with Scott,* at 548–49 (Utter, J., dissenting) (intent of individual legislators cannot establish intent of Legislature as a whole); *see also Bellevue Fire Fighters, Local 1604 v. Bellevue,* 100 Wn.2d 748, 753, 675 P.2d 592 (1984) (Legislature presumed to have knowledge of prior drafts of bills), *cert. denied,* 471 U.S. 1015 (1985).

However, in relying on these indicia of legislative intent to reduce SSP benefits, DSHS misconstrues the issue in this case. As the trial court observed, the issue is not whether the Legislature intended the reduction but whether it intended that the reduction be *mandatory.* In other words, even if we were to assume the Legislature as a whole intended for the appropriations bill to be read with reference to the budgetary working papers supporting the SSP reduction, the evidence must demonstrate that the Legislature intended this rulemaking to be treated differently from other rulemaking and to be implemented without regard to APA procedures. The trial court noted that the evidence on which DSHS relies simply does not demonstrate this; there is no indication that the Legislature intended for the agency to ignore the notice, hearing, and other procedural requirements of RCW 34.04 in the implementation of the appropriations bill.

We thus see no reason to extend the *Pannell* exception or to depart from our general understanding in *Island Cy.* that the Legislature intends appropriations as authorizations and not as mandates, absent express language to the contrary. The Legislature is of course free to mandate ben-

efits reductions, although this court would be reluctant to infer such mandates absent clear statutory language. Ambiguous intimations of mandates are fraught with difficulties. For example, DSHS argues that the Legislature's intent was to offset the federal COLA increase in order to generate $6 to $8 million savings. If the number of SSP beneficiaries were to drop significantly, would the Legislature want DSHS to implement only part of the proposed reduction if the State could thereby still realize its savings goal, or would the Legislature want the entire reduction implemented in order to maximize savings? Conversely, if the number of beneficiaries were to increase dramatically, would the Legislature want an even greater benefits reduction in order to meet the savings projections, or would it want to keep the reduction even with the COLA increase? Such answers are not always clear. Given the uncertainties inherent in budget projections, to deprive agencies of discretionary authority to deviate from line item amounts can frustrate rather than fulfill legislative intent. Consequently absent express language to the contrary, this court will be loath to infer any absolute mandate from lump sum appropriations.

In holding that DSHS is vested with sound discretion in disbursing its appropriations, we do not imply that the agency acted improperly in studying the budgetary working papers for indicia of legislative intent. An agency has a duty to discern legislative intent. However, an agency also has a duty to implement its rules in accordance with the APA. Nor do we imply that DSHS was obligated to withdraw or modify its proposed rule based on the Evergreen Legal Services letter. The agency is required only to consider fully public comment, not to be swayed by it. If the agency continues to believe that its proposed rule accurately reflects legislative intent, it should then adopt the rule, but only after it first has considered the comment.

DSHS raises two additional arguments for why the APA should not govern the rulemaking in this case. First, the agency argues that the rulemaking falls within the APA

exemption for those administrative procedures that conflict with federal requirements. *See* RCW 34.04.930–.931, .940. The agency argues that the federal Social Security Administration required notification of the amount of the State's SSP benefits prior to the November 26 hearing. However, DSHS does not explain why it could not have initiated rulemaking procedures several months earlier than it did. The exact percentage of the COLA increase may not have been known at that time, but the agency has failed to show why it could not have issued a rule that was sufficiently specific to fulfill the notice requirements of RCW 34.04.025. The agency knew the reduction would equal the COLA increase and would be in the range of 3.0 to 3.5 percent.

Finally, citing *Atkins v. Parker,* 472 U.S. 115, 86 L. Ed. 2d 81, 105 S. Ct. 2520 (1985), DSHS argues that no due process rights are implicated by a reduction in public assistance benefits. *Atkins,* however, is distinguishable precisely on the issue of discretionary agency action. In *Atkins,* the question was not *whether* the benefits losses were mandatory but rather whether public assistance recipients are entitled to more specific notice when such losses *are* mandatory. *See Atkins,* at 130. The Supreme Court held that when the action complained of is that of the Legislature and not of an agency, then lawful voting by the legislators provides all the process that a person is due, and notice concerns are irrelevant. *Atkins,* at 129–30.

Moreover, the plaintiff in the instant case has hinged her complaint on the violation of a specific statute, RCW 34.04, and has not simply invoked the broader–based due process guaranties. Whether constitutional notice and hearing principles would be offended by DSHS' rulemaking if Washington had no APA need not be reached in this appeal.

To reiterate, the issue here is not whether the Legislature intended DSHS to reduce the SSP benefits but whether the Legislature intended DSHS to implement a reduction without complying with the APA. Because the appropriations bill contains no express language mandating a reduction in SSP benefits, we hold that APA compliance was

required.

## II

■ The second issue DSHS raises in this appeal is whether the rulemaking substantially complied with the APA's requirements. As we indicated *ante,* this issue raises a factual question that has already been settled. The narrative report of proceedings signed by the trial judge, with no record of objection by DSHS, states that at the March 3, 1986 argument on the summary judgment motions, DSHS conceded that the APA had been violated. Although DSHS subsequently argued in its motion for reconsideration that the concession had been equivocal, the agency has not properly objected to the narrative report statement that the agency did make that concession on March 3. *See* RAP 9.5(a). Because we must consider that report as the record, *see ICD Export Corp. v. Schmidt Bros.,* 34 Wn. App. 783, 786 n.2, 663 P.2d 868 (1983), we must hold that DSHS violated the APA.

Even if we were to examine DSHS' argument on the merits, however, we would reach the same result.

Washington's APA requires that prior to the adoption of a rule, the promulgating agency "shall consider fully all written and oral submissions respecting the proposed rule". RCW 34.04.025(3). Failure to comply substantially with APA procedures renders rulemaking invalid. RCW 34.04-.025(5); *see* RCW 34.04.070(2).

DSHS does not dispute the fact that prior to the November 26 hearing date and to receiving the written comment from Evergreen Legal Services, the agency had advised the Social Security Administration of the State's "opting" to reduce the SSP benefits. This fact strongly suggests that DSHS had promulgated its rule without "consider[ing] fully all written . . . submissions respecting the . . . rule". *See* RCW 34.04.025(3). DSHS asks us to conclude otherwise, however, and to hold that the agency's actions satisfied the APA requirement of substantial compliance. In support of its contention, DSHS cites *Ocosta*

*Sch. Dist. 172 v. Brouillet,* 38 Wn. App. 785, 689 P.2d 1382, *review denied,* 103 Wn.2d 1009 (1984).

In *Ocosta,* the Superintendent of Public Instruction had issued annual bulletins advising school districts of the deductions the Superintendent planned to make from the districts' allocations. In March 1980, representatives from the Ocosta district met with members of the Superintendent's office and opposed one of the planned deductions. In June the Superintendent entered the disputed deduction in the accounting books, and in July he adopted a rule permitting the deductions. The Superintendent subsequently adopted an amendment clarifying the deduction. Both the rule and the amendment were properly promulgated pursuant to the APA.

The Court of Appeals upheld the deduction even though it had been entered on the books prior to proper rulemaking, for the court found that the deduction did not actually occur until after the close of the school year, August 31, 1980.

> The Superintendent only *estimates* the amount of State funding available to each district at the beginning of each year. He *adjusts* the estimates as data become available throughout the year and makes his final accounting in the January following the close of the school year. While he attempts to make payments throughout the year in such a way as to maintain an even cash flow to the districts, he does not *calculate or fix* the actual allocation . . . until after the close of the school year.

(Italics ours.) *Ocosta,* at 792.

DSHS asks us to view its November 7 directive to the Social Security Administration as merely a preliminary signaling of an intention to make the SSP reduction rather than as a final decision. Thus, any impropriety in the November 7 letter would have been cured by the agency's subsequent consideration of the Evergreen Legal Services submission.

The principal evidence of whether the agency was signaling an intention or was rendering a decision is the November 7 letter itself. The letter states that "the state is

opting to revise the SSP per the Social Security Amendments of 1983." Looking at the letter in a light most favorable to DSHS, we nevertheless must conclude that the agency had already fixed on its decision. The letter contains no conditional or qualifying language, such as "the state is considering revising the SSP" or "the state *may* revise the SSP." Moreover, to the extent that the Social Security Administration's interpretation of the letter is probative of the letter's intent, we note that the Administration's November 25 letter advised SSI recipients of the effect of the SSP reduction on their payments. The November 25 letter thus shows that the Social Security Administration believed the decision to reduce SSP benefits had already been finalized.

■ Full consideration of public comment prior to agency action is both a statutory and constitutional imperative. *See* RCW 34.04.025(5); *Ocosta,* 38 Wn. App. at 791; *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972). The opportunity for public comment is essential to agency rulemaking, not because public comment is invariably helpful in discerning legislative intent but because the agency's authority to act is premised on the functioning of such procedural safeguards. *See Barry & Barry,* at 159. The APA contains no harmless error provision permitting an agency not to consider public comment even when the public comment proves unpersuasive; rulemaking conducted without substantial compliance with APA requirements is per se invalid. *See* RCW 34.04.025(5).

## III

■ The rules of appellate procedure permit an award of attorney fees to a prevailing respondent in a frivolous appeal. *Boyles v. Department of Retirement Sys.,* 105 Wn.2d 499, 508–09, 716 P.2d 869 (1986); *see* RAP 18.9(a). An appeal is frivolous when there are no debatable issues upon which reasonable minds could differ and when the appeal is so totally devoid of merit that there was no reasonable possibility of reversal. *Boyles,* at 509. The record

should be examined as a whole, and doubts should be resolved in favor of the appellant. *Boyles v. Department of Retirement Sys., supra.*

We hold that this appeal meets the test in *Boyles.* DSHS has raised two claims: that the APA does not apply to the instant rulemaking and that even if the APA did apply, the rulemaking was in compliance with the statutory requirements.

As we noted *ante,* the record itself—and in particular the narrative report of proceedings—belies the latter claim. The former claim was frivolous because DSHS failed to address the basis of the trial court's decision.

The trial court held that neither the appropriations bill itself nor its legislative history manifests any *mandate* with respect to an SSP reduction. The trial court noted that even if DSHS' evidence were taken as representing legislative intent for an SSP reduction to be implemented, the evidence does not support the contention that the Legislature wanted the reduction implemented *without regard to the APA.*

On appeal DSHS has spent a great deal of time attempting to demonstrate that the Legislature intended the reduction, but the agency has failed to address the trial court's concern that the evidence fails to show that the Legislature intended for APA requirements to be disregarded. Thus, even if we were to accept DSHS' assertion that the Legislature intended the reduction, we have been offered no basis for disregarding the APA.

Because DSHS has provided no grounds for reversing the trial court, we hold that this appeal is frivolous. The judgment of the trial court is affirmed and the action remanded for a determination of reasonable attorney fees.

BRACHTENBACH, DOLLIVER, DORE, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.