# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MAUREEN MCGRATH, | No. 83325-1-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ERIN GIBBONS, GREG GIBBONS and SHEILA MAUREEN GIBBONS, an Incapacitated Person, by and through her Guardian, Sound Senior Assistance, Inc., | |
| Respondents. | |

ANDRUS, C.J. — Maureen McGrath appeals the trial court's order denying her motion for summary judgment in which she sought a declaratory judgment invalidating several court orders issued in a still-pending contested guardianship case concerning her daughter. Maureen's challenge[1] to the denial of summary judgment is not appealable as a matter of right and we conclude there is no basis for granting discretionary review. We therefore dismiss this appeal.

## FACTS

Maureen McGrath and Greg Gibbons, divorced since 1984, have two daughters, Erin and Sheila. Sheila is severely disabled and requires 24-hour care.

---

[1] We refer to the parties by their first names for clarity. We mean no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

Before 2014, Maureen and Sheila lived together in San Diego where Maureen was appointed by a California state court as Sheila's conservator.

Maureen moved with Sheila to Seattle in 2014 to be closer to Erin and Erin's daughter. Maureen made no attempt to register her out-of-state guardianship in Washington under RCW 11.90.420. The California court dismissed the conservatorship in 2015 based on its inability to locate Maureen.

Ben Ketcham is the father of Erin's daughter. Within two years of Maureen's arrival in Seattle, Ketcham moved in with and married Maureen. Maureen and Ketcham intended to return to San Diego with Sheila in 2019, but in July of that year, Erin filed a guardianship petition for Sheila, alleging that Maureen had cut off Erin's visitation with Sheila after Erin filed a complaint with Adult Protective Services regarding Sheila's care. This guardianship proceeding remains ongoing under King County Superior Court no. 19-4-13521-0 SEA.

On July 12, 2019, the guardianship court appointed a guardian ad litem (GAL) and ordered the GAL to submit a report to the court recommending an independent guardian for Sheila. It further ordered that Sheila's "permanent residence in Washington State may not be changed until further order of this court."

Maureen moved to vacate the July 2019 order, arguing that the restriction on moving Sheila from Washington was an invalid form of restraining order. Greg, Sheila's father, sought a temporary restraining order and noted it for consideration together with the guardianship petition on October 3, 2019. When the GAL was unable to complete her report in time for this hearing, the court continued it to October 29, 2019. The court again ordered that Sheila "shall not be removed from

the State of Washington until further order of the court." The GAL submitted her report on October 25, 2019, after which the parties stipulated to continue the hearing until November 13, 2019.

The GAL's report recommended that "McGrath should not be allowed to move Sheila to California until the guardian has been appointed, been fully informed and has a court approved plan to ensure the guardianship is transferred to California and a professional (non-family) is appointed to serve." The report went on to state that Sheila "should be allowed to visit her sister, Erin Gibbons, on a set schedule as they had prior to Maureen McGrath cutting off Erin Gibbons' visits. . . . The Court should not allow anyone, including Ben Ketcham, to interfere with these visits." The report also admonished Maureen for failing to notify the California probate court of Sheila's move to Washington, or otherwise adhere to her duties under the California conservatorship.

The parties temporarily resolved their dispute before the November 13, 2019 hearing. The court did not enter an order on Greg's motion for a temporary restraining order or Maureen's motion to vacate the July 2019 order, but instead entered an agreed visitation order providing a schedule for Erin's visits with Sheila. The court also appointed Sound Senior Assistance (SSA) as guardian of Sheila's person and estate.

Maureen testified that, in March 2020, Mimi Hudson of SSA recommended that Maureen return to San Diego with Sheila and, in consultation with Hudson, Maureen and Ketcham did so. When Greg and Erin learned of Maureen's departure, Greg sought an order directing Maureen to return Sheila to Washington.

The trial court granted the motion in April 2020. The court found that Sheila was under a pending Washington guardianship, that on October 3, 2019, the court had ordered that Sheila's permanent residence not change pending further order of the court, that no order modified or voided this provision of the order, that the court entered an order in November 2019 granting Erin visitation rights that required Sheila to remain in Washington, and that Maureen intentionally violated both orders by relocating Sheila to California. The court also expressed concerns about the adequacy of Maureen's care and supervision of Sheila in San Diego. The court required Maureen to return Sheila to Washington within 14 days, noncompliance with which would lead to $100 per day in sanctions. The court awarded attorney fees and costs to Greg for having to bring the motion.

Maureen returned Sheila to Washington to avoid monetary sanctions. She did not seek appellate review of the April 2020 order, instead "elect[ing] to grin and bear it."

In August 2020, the GAL sought instructions from the court regarding Sheila's care plan and requested that an expert be appointed to investigate and determine Sheila's residence preference. In September 2020, the court noted that Sheila's family disputed where Sheila should live and with whom. It appointed Dr. Wendy Marlowe as an expert evaluator to determine Sheila's best interests and her preferences, to the extent they could be discerned. Again, Maureen did not seek appellate review of this order.

Concerned that Dr. Marlowe's recommendation would be adverse to her interests in the guardianship case, Maureen filed this separate declaratory

judgment action on May 27, 2021, arguing that the October 3, 2019 order establishing Sheila's residence as Washington was void and superseded by the November 13, 2019 order appointing SSA as guardian and establishing a temporary visitation schedule. Maureen then moved for summary judgment asking the trial court to set aside the guardianship court's April 2020 order "due to the hearing judge's reliance on unenforceable temporary orders and misapplication of the facts." Greg opposed the motion because the issue of Sheila's residency was then pending before the guardianship court, awaiting resolution after Dr. Marlowe completed her evaluation. He argued Maureen could not bring a second lawsuit to adjudicate the same issues pending before the guardianship court.

The trial court denied Maureen's motion for summary judgment. In its oral ruling, incorporated into the order, the court found that "the guardianship case that's now currently pending is—is one . . . in which there is jurisdiction over everyone who is involved in this case." It further found that the issues of Sheila's residency and visitation are "continuing major issues" in that pending case. And, it acknowledged, "there's an investigation underway right now by Ms. Marlowe to determine what might be in the best interest of Sheila with that respect." It reasoned that

> we have parties in the guardianship case who are dissatisfied with rulings by [a] particular superior court judge. If the parties – and not just Ms. McGrath, but everybody in the guardianship, all the interested parties, if they have any remedies for what they believe to be errors in the guardianship case, their remedy is [a] motion for reconsideration, a motion for a revision, if it's a commissioner's . . . order. They can bring a renewed motion based upon new circumstances. They can seek discretionary review with the Court of Appeals.

But what they cannot do, the court said, is bring a separate declaratory judgment action. It held that the Uniform Declaratory Judgment Act (UDJA)[2] "does not authorize one judge to invalidate another judge's order in a totally new lawsuit." Moreover, it concluded that "it just doesn't seem to me to make sense, from a practical standpoint or from a legal standpoint, to have parallel lawsuits grinding through the system." The trial court chose not to dismiss the lawsuit, however, because even though its ruling may be "telegraphing to the defendants" how it might rule on a defense dispositive motion, there was no formal motion to dismiss before it.

Maureen filed a notice of appeal to this court, seeking review of the order denying her motion for summary judgment. A commissioner of this court recognized that the order may not be appealable under RAP 2.2 but deferred a ruling on appealability to this court.

ANALYSIS

Appealability

Maureen contends that the order denying her motion for summary judgment is appealable as a matter of right. We disagree. RAP 2.2(a) sets forth the types of decisions that may be appealed as a matter of right. These include:

> (1) *Final Judgment*. The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.
> . . . .
> (3) *Decision Determining Action*. Any written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action.
> . . . .

---

[2] Chapter 7.24 RCW.

(13) *Final Order After Judgment.* Any final order made after judgment that affects a substantial right.

Our case law is unequivocal—the denial of a summary judgment motion is not a final order that can be appealed under RAP 2.2(a). *In re Estate of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012); *DGHI, Enters. v. Pacific Cities, Inc.*, 137 Wn.2d 933, 949, 977 P.2d 1231 (1999).

Maureen argues that the trial court's oral ruling "effectively dismissed [her] request for declaratory relief" and she should be permitted to appeal it under RAP 2.2(a)(1). But the only authority Maureen cites is *Purse Seine Vessel Owners Ass'n v. State*, 92 Wn. App. 381, 387, 966 P.2d 928 (1998). There, Division Two of this court held that a trial court's order denying a plaintiff's request for declaratory relief, <u>after a trial by affidavit</u>, is appealable as a final judgment. The ruling in *Purse Seine*, unlike the order in this case, was a final one and did not involve the denial of summary judgment motion. The denial of Maureen's motion for summary judgment is not appealable under RAP 2.2(a).

### Discretionary Review

Maureen, however, could have filed a motion for discretionary review under RAP 2.3(b). RAP 2.3(b) allows for discretionary review (1) where the superior court has committed obvious error which would render further proceedings useless, or (2) where the superior court has committed probable error and the decision alters the status quo or substantially limits the freedom of a party to act. Maureen has failed to establish either obvious or probable error in the trial court's ruling.

First, the plain language of the UDJA undermines Maureen's claim that a litigant, dissatisfied with court rulings in a pending lawsuit, can challenge those rulings collaterally by filing a new, separate lawsuit framed as a request for "declaratory relief" under the UDJA. The UDJA provides:

> A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020. By its explicit language, the UDJA allows a party to seek a judicial determination of rights under a deed, will, written contract, statute, ordinance, contract or franchise. It does not allow a party to seek a court order invaliding an order issued by a different court.

Second, Maureen cites no case law to support her contention that the UDJA may be invoked to challenge interlocutory court orders. She contends that Washington courts have previously held that a party may seek declaratory relief with respect to the interpretation of court orders, citing *In re Marriage of Mudgett*, 41 Wn. App. 337, 340, 704 P.2d 169 (1985). But *Mudgett* is not helpful to Maureen.

In that marital dissolution case, the parties jointly prepared a separation contract awarding the couple's residence to the wife as her separate property subject to a lien in favor of the husband "to be paid when the residence is sold." *Id.* at 338. The trial court approved the contract in a decree of dissolution of marriage. *Id.* at 338-39. Three years later, the husband filed a complaint, seeking declaratory relief in the form of an order requiring the wife to pay off his lien through

the sale or mortgage of the residence, and asking the court to amend the decree to provide for the distribution of certain savings bonds owned by the couple. *Id.* at 339. The trial court dismissed the complaint on summary judgment, holding that declaratory relief is not available to amend a dissolution decree. *Id*.

On appeal, the husband argued that declaratory relief was appropriate because he sought to clarify and interpret ambiguities in the existing decree and did not wish to modify it. *Id*. at 340. Although this court discussed decisions from other jurisdictions holding that a declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract, we nevertheless held that a declaratory judgment action was *inappropriate* in that case because there was no ambiguity in the couple's separation contract. *Id.* at 340-41. *Mudgett* does not support Maureen's argument here. Her declaratory judgment complaint does not ask a court to interpret an ambiguous contract; she is attacking the validity of orders issued in a pending lawsuit.

Third, the UDJA does not allow a collateral attack on court orders in a guardianship proceeding when that proceeding remains pending in the trial court. *See Atlantic Cas. Ins. Co. v. Oregon Mut. Ins. Co.*, 137 Wn. App. 296, 302, 153 P.3d 211 (2007) (priority of action rule required dismissal of declaratory judgment action raising claim duplicative of those litigated in ongoing garnishment action); *State ex rel. Greenberger v. Superior Court for King County*, 134 Wash. 400, 401, 235 P. 957 (1925) ("It is a familiar principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed

of; and no court of co-ordinate authority is at liberty to interfere with its action" (quoting *Maclean v. Wayne Circuit Judge*, 52 Mich. 257, 18 N.W. 396 (1884))).

Maureen could have challenged the order finding that she intentionally violated the order precluding removal of Sheila from Washington. She could have filed a motion for reconsideration, sought discretionary review of that order, or asked the trial court to certify the decision for a direct appeal under CR 54(a).[3] Maureen has provided no reasonable explanation for her failure to pursue these options, other than that she considered them "futile" and "useless."

Because Maureen has no right of direct appeal and has failed to demonstrate obvious or probable error warranting discretionary review under RAP 2.3, we dismiss this appeal.

<u>Frivolous Appeal</u>

Greg Gibbons asks this court for an award of attorney fees on appeal, arguing that Maureen's complaint, motion for summary judgment, and appeal had no legitimate basis in law and thus violated CR 11(a). RAP 18.9(a) provides that this court may order a party or counsel to pay terms for filing a frivolous appeal. An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so devoid of merit that there was no reasonable possibility of reversal. *Mahoney v. Shinpoch*, 107 Wn.2d 679, 691, 732 P.2d 510 (1987). We

---

[3] The April 2020 order finding that Maureen intentionally violated two guardianship orders may have been appealable as a matter of right as analogous to an order of contempt. *See In re Estates of Smaldino*, 151 Wn. App. 356, 363, 212 P.3d 579 (2009) ("An adjudication of contempt is appealable if it is a final order or judgment; i.e., the contumacy—the party's willful resistance to the contempt order—is established, and the sanction is a coercive one designed to compel compliance with the court's order" (quoting *Wagner v. Wheatley*, 111 Wn. App 9, 15-16, 44 P.3d 860 (2002))). We need not address this issue, however, as Maureen did not file a notice of appeal from that order.

review the record as a whole and resolve any doubts in favor of the appellant. *Id.* at 691-92.

We can identify no debatable issues. Maureen has no support for her claim that the order denying summary judgment is appealable. She made no attempt to explain why we should alternatively grant discretionary review. And she provided no support for her theory that she can file a separate lawsuit to challenge the validity of court orders issued in a still-pending lawsuit.

We conclude this appeal to be so devoid of merit that Maureen had no reasonable possibility of reversal. We therefore grant Greg's request for attorney fees on appeal, subject to compliance with RAP 18.1.

Andrus, C.J.

WE CONCUR:

Díaz, J.                                    Chung, J.