**FILED**
**MAY 29, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JUSTIN HANLEY, | ) | No. 40398-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DUNN INVESTMENT GROUP, LLC | ) | |
| dba ALLIANCE AUTO SALES, a limited | ) | |
| liability company of the State of | ) | |
| Washington, and MATT DUNN, | ) | |
| individually and its agent, | ) | |
| | ) | |
| Appellants. | ) | |

LAWRENCE-BERREY, C.J. — Dunn Investment Group, LLC and Matt Dunn appeal the trial court's order granting summary judgment to Justin Hanley for wages owed, exemplary damages, and the order awarding him attorney fees. They dispute the validity of the written employment agreement, whether Mr. Dunn willfully withheld wages owed, and the amount of wages owed. They also argue the trial court erred by awarding attorney fees to Mr. Hanley without segregating the time spent on claims not permitting recovery of attorney fees. We affirm and award Mr. Hanley his reasonable attorney fees on appeal.

FACTS

Matt Dunn was the principal owner of Dunn Investment Group, LLC, (DIG) from June 2019 until it closed at the end of May 2023.  In September 2021, Mr. Dunn executed a power of attorney (POA), appointing a handful of employees "to act on [his] behalf, as it pertains to business and the scope of their duties in their job position."  Clerk's Papers (CP) at 51.  The POA listed Santana Jose as in charge of marketing.  The POA further empowered each appointee to "act on my behalf for anything that I may lawfully do myself as it pertains to business."  CP at 51.

Justin Hanley was an experienced automobile mechanic and had run his own business since 2021.  DIG, which did business as Alliance Auto Sales, needed an experienced automobile mechanic.  In early 2022, Mr. Dunn repeatedly approached Mr. Hanley about working for DIG.  Eventually, Mr. Dunn's offer was too good to refuse, and Mr. Hanley closed his business and went to work for DIG.

Justin Hanley entered into a 10-page written employment agreement with DIG, effective June 13, 2022.  The agreement included terms of compensation, an employee noncompetition agreement, and a confidentiality agreement.  It was on DIG letterhead and signed by both parties.  DIG's signature block indicated it was signed by Santana Jose, "Title: Human Resources."  CP at 47.

According to the agreement, DIG hired Mr. Hanley as "the Mechanic of the Company." CP at 40. It promised him a base compensation of $50 per hour in bi-weekly installments and additionally promised "20% of top line revenue of the mechanic department to be paid out at the end of each quarter." CP at 40. It is this additional compensation that DIG failed to pay Mr. Hanley.

After Mr. Hanley's first quarter ended, he spoke with Mr. Dunn about not receiving the promised 20 percent top line revenue. Mr. Dunn told him that DIG did not have the money to pay him, and he would not "get the 20% for at least six months." CP at 35. Mr. Hanley continued working for DIG, but was laid off on November 7, 2022.

In May 2023, Mr. Hanley brought an action for unpaid wages against DIG and Mr. Hanley. He asserted two causes of action—violation of wage statutes and breach of contract. The parties then engaged in brief discovery.

Pertinent to the summary judgment motion and this appeal, Mr. Hanley asked in one interrogatory: "Please produce any and all documents and information that establish the revenue and volume of work for the Defendant's Mechanic Department." CP at 159. Mr. Dunn responded: "*There are no documents.* The company was dissolved and is pending bankruptcy. The lease was not paid and *the owners took over the property and threw everything away and changed the locks.*" CP at 159 (emphasis added). Mr. Dunn signed the response under penalty of perjury on July 25, 2023.

3

Mr. Hanley moved for summary judgment and provided extensive documentation to support the amount he claimed was owing. Before DIG's business records were destroyed, Mr. Hanley had made copies of invoices for all repairs performed by DIG's mechanic shop during the course of his employment. According to the invoices, the top line revenue during Mr. Hanley's employment with DIG was $205,743.16, resulting in wages owing of $41,148.63.

DIG and Mr. Dunn opposed Mr. Hanley's motion. Mr. Dunn asserted he never promised Mr. Hanley 20 percent of top line review but instead promised him 20 percent of bottom line (net) revenue. Although Mr. Dunn admitted he had asked Ms. Jose to prepare the written employment agreement, he asserted she was to prepare it for *his* signature and he never saw it. DIG and Mr. Dunn argued that the written employment agreement was invalid, and Mr. Dunn did not knowingly withhold wages (for purposes of his personal liability, exemplary damages, and attorney fees). With respect to withheld wages, they argued that DIG was not profitable and, because there was no net revenue, DIG owed Mr. Hanley nothing. Alternatively, if the written agreement was enforceable,

4

they asserted that DIG's top line revenue for when Mr. Hanley was employed (June 13, 2022—November 7, 2022) was $43,721.72, resulting in wages owing of $8,744.34.[1]

The trial court granted Mr. Hanley's motion, concluding there were no genuine issues of material fact and later awarded Mr. Hanley the attorney fees he requested. DIG and Mr. Dunn timely appealed.

## ANALYSIS

### A. AWARD OF SUMMARY JUDGMENT

We review the trial court's award of summary judgment de novo. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). When determining if an issue of material fact exists, the court construes all facts and reasonable inferences in favor of the nonmoving party. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 601, 200 P.3d 695

---

[1] The supporting document for DIG's top line revenue figure is a three-page profit and loss statement that contains several dozen line items, including a line item of $43,721.72 for "Service Shop Sales." CP at 225. Apparently, this document was specifically created to show DIG's profit and loss for the period when Mr. Hanley worked—from June 13, 2022 through November 11, 2022. The document's heading, however, reads "June 13, 2022 - November 11, 2023." CP at 225.

The year, 2023, is an obvious error. First, Mr. Dunn admitted he closed DIG in May 2023, so a profit and loss statement for a date exactly one year after Mr. Hanley was laid off makes no sense. Second, the document's footer shows it was created November 7, 2023, so it could not have intended to reflect DIG's profit and loss through November 11, 2023.

(2009). Issues that generally present a question of fact can be decided on summary

judgment "[i]f reasonable minds could reach but one conclusion based on the facts in

evidence." *White v. State*, 131 Wn.2d 1, 16, 929 P.2d 396 (1997).

1.    *Validity of the written employment agreement*

DIG and Mr. Dunn argue the trial court erred by concluding there were no genuine

issues of material fact with respect to the validity of the written employment agreement.

We disagree.

An agent may bind their principal under two types of authority: actual or apparent.

*Deers, Inc. v. DeRuyter*, 9 Wn. App. 240, 242, 511 P.2d 1379 (1973). A generous

reading of the POA restricts an appointee's authority to sign for Mr. Dunn to their scope

of duties. Mr. Dunn, referring to the September 2021 POA, casts Ms. Jose as having only

marketing duties. He argues that a marketing employee does not have authority over

employment agreements. In general, this may be true. But here, Mr. Dunn admitted he

gave Ms. Jose authority to prepare Mr. Hanley's 10-page employment agreement. Thus,

by June 2022, Ms. Jose's duties were broader than marketing and included tasks

generally assigned to human resources. This broadened duty is confirmed by Ms. Jose

signing for DIG as "Human Resources." CP at 41, 47. Mr. Dunn does not assert that this title misstates Ms. Jose's June 2022 actual duties.[2]

Mr. Dunn also argues there are genuine issues of material fact as to whether a mutual mistake occurred, allowing the employment agreement to be reformed or treated as voidable. He failed to raise this argument below, and we decline to consider it for the first time on appeal. RAP 2.5(a).

We conclude the trial court correctly determined there were no genuine issues of material fact with respect to the validity of the written employment agreement.

2.      *Willful withholding of wages*

Mr. Dunn argues the trial court erred in determining there were no issues of material fact whether he[3] willfully withheld Mr. Hanley's wages. We disagree.

---

[2] Ms. Jose knew that Mr. Dunn would review the written employment agreement he asked her to prepare. In the agreement, Ms. Jose conspicuously typed her title as "Human Resources." It makes no sense that Ms. Jose would type this unless this was in fact her job title. Similarly, it makes no sense that Ms. Jose would sign for the company unless she in fact had authority to sign. For a company officer to put her job on the line for no reason runs against logic and human experience.

The purpose for summary judgment is to dispense with a useless trial. This is why summary judgment is appropriate if reasonable minds can reach but one conclusion based on the facts in the evidence. As will be discussed soon, it is evident that Mr. Dunn created a false record in an attempt to defeat summary judgment. The taint of this false document no doubt plays some role in our disposition of this issue.

[3] DIG does not challenge the trial court's determination that it willfully withheld Mr. Hanley's wages.

"Any employer or officer, vice principal or agent of any employer . . . who . . . [w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . . [s]hall be guilty of a misdemeanor." RCW 49.52.050. "Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050(1) and (2) shall be liable in a civil action by the aggrieved employee . . . for twice the amount of wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.

The standard for proving willfulness is low—a failure to pay will be deemed willful unless it was a result of carelessness or error. *Hill v. Garda CL Nw., Inc.*, 191 Wn.2d 553, 561, 424 P.3d 207 (2018). One may defeat a showing of willful deprivation of wages by showing there was a bona fide dispute as to whether all or part of the wages were really due. *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 160, 961 P.2d 371 (1998). The burden is on the employer (or person to be held liable) to show the existence of a bona fide dispute. *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wn.2d 822, 834, 287 P.3d 516 (2012).

A bona fide dispute has both a subjective and an objective component. The subjective component asks whether the employer (or person to be held liable) genuinely

8

believed in the dispute at the time of the wage violation. *Hill*, 191 Wn.2d at 562. The

objective component asks whether the dispute was fairly debatable. *Id.* One seeking to

avoid liability for exemplary damages must establish both components. *Id.* While the

subjective component is a question of fact, the objective component is a question of law.

*Id.*

Here, at the time of the wage violation, there was no fairly debatable dispute

regarding what DIG had agreed to pay Mr. Hanley. The language in the employment

agreement was unmistakably clear, "You will also earn 20% of top line revenue of the

mechanic department to be paid out at the end of each quarter." CP at 40. Mr. Dunn's

subjective belief of what DIG had agreed to pay Mr. Hanley was not objectively

reasonable.[4]

We conclude the trial court correctly determined there were no genuine issues of

material fact with respect to whether Mr. Dunn willfully withheld Mr. Hanley's wages.

3. *Top line revenue for mechanic's department*

Mr. Hanley submitted evidence that the top line revenue for the mechanic's

department while he was employed was $205,743.16. Mr. Dunn, however, submitted a

three-page profit and loss statement that had a line entry showing that "Service Shop

---

[4] Mr. Dunn could have revoked the written employment agreement at any time, since Mr. Hanley's employment was at will. But until the agreement was revoked, it was enforceable.

Sales" while Mr. Hanley was employed was $43,721.72. CP at 225. On the surface, there appears to be a genuine issue of material fact as to what the top line revenue was.

Mr. Hanley argues that reasonable minds could reach only one conclusion— that his calculation, supported by actual contemporaneous invoices, should be used to calculate top line revenue rather than Mr. Dunn's. Mr. Hanley argues that Mr. Dunn's document is not an actual DIG business record and was created by Mr. Dunn after DIG's records were thrown away. Mr. Dunn offers no explanation for how he created a document with dozens of detailed dollar and cent entries without supporting records. We can think of none.[5]

We conclude that the trial court correctly determined that there were no genuine issues of material fact with respect to the top line revenue of the mechanic's department.

B.    ATTORNEY FEES AWARDED BELOW

DIG and Mr. Dunn argue the trial court erred in awarding Mr. Hanley attorney fees without segregating fees between his statutory wage claim (that permits an award of

---

[5] In their summary judgment response, even defense counsel contradicted the three-page profit and loss document when she wrote, "The Company does not keep records specifically for the mechanics department. As such, there is no basis for which to determine the amount that the Plaintiff is claiming." CP at 115.

attorney fees) and his breach of contract claim and the time he spent enforcing a

prejudgment wage lien.[6]  We disagree.

We review the reasonableness of a trial court's attorney fee award for an abuse of

discretion.  *Falcon Props., LLC v. Bowfits 1308, LLC*, 16 Wn. App. 2d 1, 11, 478 P.3d

134 (2020).  Generally, when a party prevails on some claims for which attorney fees are

available and others where they are not, attorney fees should be awarded only for the

claims that allow fees.  *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 66, 738 P.2d 665

(1987).  However, a trial court need not artificially segregate time for claims relating to

the same fact pattern but alleging different bases for recovery.  *Manna Funding, LLC v.*

*Kittitas County*, 173 Wn. App. 879, 901, 295 P.3d 1197 (2013); *Hume v. Am. Disposal*

*Co.*, 124 Wn.2d 656, 673, 880 P.2d 988 (1994).

Here, the statutory claim (that wages were owed under the written contract)

required proof that the written contract was enforceable and therefore involved the same

fact pattern as the breach of contract claim.  In addition, the time spent enforcing the

prejudgment wage lien was reasonably necessary for successfully prevailing on the

---

[6] Mr. Hanley had filed a prejudgment wage lien against DIG and sought to enforce it by attaching proceeds from the sale of a separate company that Mr. Dunn had sold for $750,000.  The trial court confirmed the validity of the lien, and ordered Mr. Dunn to deposit just under $130,000 into the court registry.

No. 40398-0-III
*Hanley v. Dunn Inv. Grp.*

statutory wage claim. By Mr. Dunn's own admission, neither he nor DIG had funds to pay a judgment and both would be required to file bankruptcy.

We conclude the trial court did not abuse its discretion by failing to segregate the time supporting the fee award, as urged by DIG and Mr. Dunn.

C.    ATTORNEY FEES ON APPEAL

Mr. Hanley devotes a section of his brief to requesting attorney fees on appeal. Although he fails to cite the statute that authorizes recovery of fees, the prior section in his brief discusses RCW 49.52.050(2), which is sufficient authority.

We deem Mr. Hanley the substantially prevailing party on appeal. We excuse his failure to reiterate the statutory authority that authorizes fees on appeal and, subject to his compliance with RAP 18.1(d), grant his request for reasonable appellate fees.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

I CONCUR:

_Murphy, J._
Murphy, J.

12

No. 40398-0-III

Staab, J. (dissenting) — I respectfully disagree with the majority's conclusion that there are no genuine issues of material fact and that summary judgment in favor of the plaintiff was correct. When the facts are properly considered in a light most favorable to the non-moving party, genuine issues of material fact exist that preclude summary judgment.[1]

Matthew Dunn admits that Justin Hanley worked for Dunn Investment Group, LLC (DIG) as a mechanic and was promised certain compensation. The parties agree that Hanley's hourly rate of pay was $50 per hour and that Hanley has been paid those wages. The parties also agree that part of Hanley's compensation would include profit sharing, but they disagree on the calculation method. Dunn asserts that there was an oral contract for Hanley to receive twenty percent of bottom line revenue and since the company never made a profit, Hanley was not entitled to any additional compensation.

In contrast, Hanley asserts that Dunn agreed to pay him twenty percent of the "top line revenue of the mechanic department to be paid out at the end of each quarter." Clerk's Papers (CP) at 40. In support of his position, Hanley produced a written

---

[1] A gentle reminder that CR 56(h) requires the order on summary judgment to "designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered."

employment contract that provided for this calculation.  The contract was presented to

Hanley by Santana Jose, who worked for DIG and who signed the contract as DIG's

"Human Resources."  CP at 47.

In response, Dunn contends that he asked his "Marketing Director," Jose, to

prepare an employment package, but he never saw the documents, had never seen the

contract produced by Jose, and did not authorize Jose to sign it on DIG's behalf.

Hanley replied that Jose was authorized to sign the contract on behalf of DIG and

points to a power of attorney (POA) that Dunn signed the year prior, appointing "the

following individuals to act on my behalf, as it pertains to business and the scope of their

duties in their job positions."  CP at 51.  The POA goes on to list Santana Jose, Marketing

and Jessica Madsen, Human Resources.  The individuals listed in the POA, including

Jose, were authorized to "act on my behalf for anything that I may lawfully do myself as

it pertains to business."  CP at 51.

In order to prevail on summary judgment, Hanley must establish the lack of any

genuine issue of material fact.  CR 56(c).  In order for Jose's signature to bind DIG,

Hanley must show that she was acting as an agent for DIG and had actual or apparent

authority to sign the employment contract.  If Jose had authority to sign the employment

contract, then it does not matter whether Dunn saw or approved of the contract and its

terms because "[a]n agent's exercise of either type of authority results in the principal[ ]

being bound." *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. 355, 364, 818

P.2d 1127 (1991). On the other hand, if Jose had neither actual nor apparent authority to sign the contract then it is not binding on DIG or Dunn.

As the person asserting Jose's agency, Hanley has the burden of showing that Jose was authorized to sign the employment contract. *ICD Exp. Corp. v. Schmidt Bros.*, 34 Wn. App. 783, 784-85, 663 P.2d 868 (1983). "[W]hether an agent has actual or apparent authority" is a question of fact. *Id.* The law on actual and apparent authority was succinctly put forth by our Supreme Court:

> Actual authority may be express or implied. Implied authority is actual authority, circumstantially proved, which the principal is deemed to have actually intended the agent to possess. Both actual and apparent authority depend upon objective manifestations made by the principal. With actual authority, the principal's objective manifestations are made to the agent; with apparent authority, they are made to a third person. Such manifestations will support a finding of apparent authority only if they have two effects. First, they must cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal. Second, they must be such that the claimant's actual, subjective belief is objectively reasonable.

*King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994) (citations omitted).

The *King* Court goes on to provide examples. The most common example of implied actual authority is when a principal knows that an agent is acting in a manner not expressly authorized, and fails to correct the agent. *See id.* at 507. The authority to perform certain tasks also carries with it the implied authority to perform acts reasonably necessary to carry out those tasks. *Id.* Similarly, apparent authority exists when a person

is given a particular title with generally recognized duties that would convey authority to perform those duties even if there are unknown limitations on the agent's authority. *Id*. at 507-08.

Here, the evidence of Jose's actual or apparent authority is disputed. The superior court incorrectly concluded that the POA in this case provided Jose with actual authority. Power of attorneys are limited to their stated purpose and must be strictly construed. *Olivine Corp. v. United Capitol Ins. Co.*, 147 Wn.2d 148, 155-56, 52 P.3d 494 (2002). The superior court reasoned that while the POA described Jose's duties as marketing, by the time she drafted and presented the contract, Jose described herself as human resources and "Hanley was allowed to rely on this implied authority." CP at 268. This reasoning fails to establish Jose's authority.

As the attorney-in-fact, Jose cannot expand her own authority under the POA. *Charette v. Am. Sur. Co. of N.Y.*, 49 Wn.2d 777, 780, 307 P.2d 252 (1957) ("agent cannot enlarge his actual authority by his own assertions or representations"). Contrary to the superior court's conclusion, the POA only authorized Jose to act within the scope of her duties in marketing. Indeed, another person was named in the POA as "human resources." While there is additional language suggesting broader authority, the effect of this language is not clear and at most creates a question of fact. Additionally, whether Hanley could rely on the POA is questionable given there is no evidence that Hanley even knew of the POA at the time he signed the contract.

4

On appeal, Hanley argues that the POA was valid and enforceable but fails to even acknowledge the limitations in authority granted by the POA.

The superior court's decision also implies that actual authority is supported by the fact that Dunn asked Jose to prepare the document, which she then presented to Hanley on DIG letterhead and signed as a duly authorized officer with the title "Human Resources." According to the law developed in *King*, these facts fail to establish either actual or implied authority.

Whether implied or express, actual authority requires the principal's knowledge of the agent's actions. *King*, 125 Wn.2d at 507. When viewed in a light most favorable to Dunn, the facts cited by the superior court show that Dunn had only authorized Jose to prepare documents. No authority is cited to support the conclusion that granting an employee or agent the authority to prepare a document implies the authority to sign it on behalf of the principal. Nor can Jose's action of holding herself out as human resources create authority without evidence that Dunn knew she was doing so. Finally, there is no evidence that Dunn himself changed Jose's title to human resources thereby providing apparent authority to perform those tasks generally associated with this title.

The majority concludes that Dunn's admission that he authorized Jose to prepare the employment document provides indisputable evidence that her duties had expanded to include human resource tasks with the actual authority to sign employment contracts. This is an inferential leap that is not supported by the law and is disputed by Dunn.

Contrary to the majority's assertion, Dunn disputes that Jose was working in human resources. In his declaration, Dunn declared that at the time he directed Jose to prepare an employment package, she was a marketing director and he did not authorize her to sign the contract.

I agree that Dunn's request for Jose to prepare the employment documents and Jose's signature on the contract as "Human Resources" suggests that her duties may have changed, but in light of Dunn's declaration to the contrary and the limitations within the POA, this fact is disputed. To hold that Jose was undeniably authorized to sign the contract as a human resource officer is to consider the evidence in favor of Hanley and make credibility determinations on summary judgment.

The trial court also held as a matter of law that Dunn's failure to pay Hanley the contract compensation was willful. The court reasoned that at the very least Dunn knew of the contract since May 2023, when Hanley filed this lawsuit. Thereafter, his failure to pay the contract compensation after learning of the contract became willful. The majority affirms but on slightly different grounds: holding that since the contract was valid and authorized, Dunn's dispute about the compensation was objectively unreasonable. Majority at 9.

I disagree and believe the court's conclusion on willfulness is premature. As the majority points out, an employer may defeat a claim of willfully withholding wages by showing there was a bona fide dispute as to the wages due. *Schilling*, 136 Wn.2d at 160.

6

Here, Dunn disputes whether Jose was authorized to sign the employment contract.  A trier of fact should determine Jose's authority and whether Dunn's objection was bona fide.

_____
　　　　　　　　　Staab, J.